[L. A. No. 9014.   In Bank.—August 28, 1926.]

## ARONSON & COMPANY (a Corporation), Respondent, v. ELIZABETH PEARSON, Appellant.

[1] PLEADING — ANSWER — INSUFFICIENT DENIAL.—In an answer to a verified complaint, where the defendant alleges that "she has not sufficient knowledge or information upon which to base a belief and placing her denial upon that ground, denies," etc., the denial is insufficient under section 437 of the Code of Civil Procedure.

[2] ACTION ON STOCKHOLDERS' LIABILITY—BONDS—DECLARING DEFAULT —PLEADING — IMMATERIAL ALLEGATION. — Where a conveyance of land to a trustee as security for a bond issue provides that, upon default in payment of principal or interest of any of the bonds, the trustee may, and upon the written request of a certain percentage of bondholders, shall, by notice to the mortgagor, declare the principal of the bonds due and immediately payable, an allegation that a bondholder requested the trustee to declare the principal of all the bonds due and payable is immaterial, as the trustee was authorized to so declare without any request.

[3] ID.—ANSWER—INSUFFICIENT DENIAL.—In such a case, where the complaint alleged that the trustee executed under its corporate seal and delivered to the mortgagor a notice and demand in writing declaring the principal of all bonds secured by the trust indenture and then outstanding to be due and payable immediately, a denial in the answer "that thereafter or prior to the commencement of the action, said trustee executed under its corporate seal or delivered to the said Pearson Ranch Company (the mortgagor) a notice or demand in writing, declaring the principal of all bonds secured by the aforementioned trust indenture," is incomplete and fails to deny that the trustee declared the principal of the bonds to be due and payable immediately or that the trustee so notified the defendant.

[4] ID.—APPEAL—CONFLICTING INFERENCES—FINDINGS.—Where the evidence is sufficient to support conflicting inferences, the finding of the trial court either way thereon is conclusive on appeal, and the evidence must be viewed in the light most favorable to the support of the findings and judgment.

[5] ID.—EQUITABLE OWNER OF STOCK — LIABILITY OF — SECTION 322, CIVIL CODE.—Under section 322 of the Civil Code, providing for

---

1.   See 21 Cal. Jur. 152; 21 R. C. L. 459.
4.   See 2 Cal. Jur. 921; 2 R. C. L. 204.
5.   See 6 Cal. Jur. 1005; 7 R. C. L. 397.

stockholders' liability, the term stockholder, as used therein, applies not only to such persons as appear by the books of the corporation to be such, but also to every equitable owner of stock, although the same appears on the books in the name of another.

[6] ID.—OWNERSHIP—FINDINGS.—Upon an issue raised by a mere allegation of ownership and the denial thereof, a finding upon the fact of title or ownership is good without a finding of the particular facts upon which such title or want of title depends.

---

(1) 3 C. J., p. 727, n. 98; 31 Cyc., p. 198, n. 92, p. 199, n. 94. (2) 14 C. J., p. 1122, n. 89, 94 New; 31 Cyc., p. 203, n. 29. (3) 4 C. J., p. 777, n. 61, p. 786, n. 31, p. 848, n. 36, p. 849, n. 43, p. 879, n. 86. (5) 14 C. J., p. 1012, n. 42; 31 Cyc., p. 61, n. 84; 38 Cyc., p. 1981, n. 58, 59. (6) 38 Cyc., p. 1981, n. 58.

APPEAL from a judgment of the Superior Court of Los Angeles County. J. Walter Hanby, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. I. Gilbert and M. M. Gordon for Appellant.

Page, Nolan, Rohe & Hurt and Eugene D. Williams for Respondent.

FINCH, J., *pro tem.*—This is an appeal by the defendant from the judgment herein against her, based upon her alleged liability as a stockholder of the Pearson Ranch Company, a corporation, having a capital stock of $500,000, divided into 5,000 shares of the par value of $100 each.

In May, 1922, 4,749 shares of such stock were issued to W. J. Pearson, the husband of defendant, they having been married in the year 1909. This action is prosecuted on the theory that the defendant was at all times the equitable owner of such shares of stock and the court so found. The principal question presented by this appeal is whether the evidence sustains such finding.

June 1, 1922, the Pearson Ranch Company created an indebtedness of $188,000, evidenced by 188 bonds of the face value of $1,000 each, bearing interest at seven per cent per annum, payable semi-annually; the earliest date of maturity of any of the bonds being June 1, 1927. On the day of

---

6. See 24 Cal. Jur. 968.

their issue, the plaintiff purchased 91 of these bonds and this suit is based thereon. At the time of the creation of the indebtedness, the corporation was the owner of 1803.6 acres of land in Glenn County, and as security for the payment of the bonds it conveyed the land to the Hellman Commercial Trust & Savings Bank, as trustee. By the terms of such conveyance, the company agreed that, upon default in payment of the principal or interest of any of the bonds, "the trustee may, and upon the written request of the holders of twenty-five (25) per cent in interest of the bonds then outstanding, . . . shall, by notice to the company, declare the principal of all bonds hereby secured and then outstanding to be due and payable immediately, and upon such declaration, . . . the said principal shall become and be due and payable immediately, anything in this indenture or in said bonds to the contrary notwithstanding." No part of the principal or interest has ever been paid.

The complaint alleges that subsequent to the first day of January, 1923, the plaintiff requested the trustee to declare all of the bonds then outstanding to be due and payable immediately and that "thereafter and prior to the commencement of this action, the said trustee executed under its corporate seal and delivered to the said Pearson Ranch Company a notice and demand in writing declaring the principal of all bonds secured by the aforementioned trust indenture and then outstanding, to be due and payable immediately." The court found the allegation to be true. Appellant contends that such finding is without support in the evidence. It is true that there is no evidence in the record tending to prove or disprove the allegation, but there is no sufficient denial thereof in the answer. The attempted denial thereof is as follows:

"Defendant admits that no part of the interest payable on any of said one hundred eighty-eight (188) bonds on the first day of December, 1923, and represented by the coupons payable on said day, has been paid. Defendant alleges she has not sufficient knowledge or information upon which to base a belief and placing her denial upon that ground, denies that subsequent to the first day of January, 1923, plaintiff requested or required by a writing delivered to the trustee named in said indenture, that said trustee by notice to said Pearson Ranch Company declare the principal of all

bonds secured by said indenture and then outstanding, to be due or payable immediately; and denies that thereafter or prior to the commencement of this action, the said trustee executed under its corporate seal or delivered to the said Pearson Ranch Company a notice or demand in writing, declaring the principal of all bonds secured by the afore-mentioned trust indenture.''

[1] For sixty-eight years the form of denial adopted by the defendant has been held insufficient. Relative to the denial of the allegations of a verified complaint, section 437 of the Code of Civil Procedure provides: ''If the defendant has no information or belief upon the subject sufficient to enable him to answer an allegation of the complaint, he may so state in his answer, and place his denial on that ground.'' Section 46 of the Practice Act, as amended in 1854, permitted a defendant to deny an allegation of a verified complaint ''according to his information and belief.'' In *Curtis* v. *Richards & Vantine,* 9 Cal. 34, 38, the defendants based their denial upon the averment that ''they have not sufficient knowledge or information to form a belief.'' The court said: ''By the forty-sixth section of the Practice Act, as originally passed in 1851, it was provided, that an allegation of the complaint might be controverted by a denial 'of any knowledge thereof sufficient to form a belief.' In practice, this mode of denial was found to furnish a convenient pretext for evading the statute. In some instances, defendants became critical in their judgments, as to the extent of knowledge sufficient to form a belief, and would, without hesitation, deny, in that form, facts upon the existence of which they did not hesitate to act in other matters. In 1854, the forty-sixth section was amended to the present language, and the wisdom of the amendment is well illustrated by the present case.'' The same construction has been placed upon the foregoing provision of section 437 of the Code of Civil Procedure. (*Naftzger* v. *Gregg,* 99 Cal. 83, 87 [37 Am. St. Rep. 23, 33 Pac. 757]; *Turner* v. *Watkins,* 36 Cal. App. 503, 504 [172 Pac. 620]; *Nave* v. *Graham,* 37 Cal. App. 332, 334 [174 Pac. 76].) Such a denial will not be held fatally defective upon appeal if it was treated by the parties at the trial as creating an issue, but, since in this case neither party offered any evidence bearing upon the question, there is no ground for holding that it was so

treated. The denial is further insufficient in that it does not deny any material fact stated in the allegation. [2] The allegation that the plaintiff requested the trustee to declare the principal of all the bonds due and payable is immaterial, because the trustee was authorized to so declare without any request by the bondholders [3] and the last clause of the denial is incomplete and therefore fails to deny that the trustee declared the principal of the bonds to be due and payable immediately or that the trustee so notified the defendant.

W. J. Pearson, who then held the record title to 1,560 acres of the Glenn County land, on the 14th of January, 1916, conveyed the same to the defendant, "to her sole and separate use and to her separate estate." May 1, 1919, W. J. Pearson acquired title to 243.6 acres of adjoining land. November 12, 1919, he and the defendant joined in the execution of a deed conveying both tracts of land to Alva F. Page and Willard W. White. In exchange for such lands, Page and White conveyed to defendant certain real property and to W. J. Pearson other real property and also gave their promissory note for $106,000 to W. J. Pearson, secured by a trust deed of the Glenn County lands. Page and White defaulted in their payments and the trustee sold the land under the terms of the trust deed, W. J. Pearson becoming the purchaser, and a deed was made to him by the trustee on the 25th of April, 1921. On the same day, W. J. Pearson and the defendant executed a deed in the usual form, purporting to convey the same lands to the Citizens Trust & Savings Bank. While the latter deed was absolute in form, it appears to have been given as security for an indebtedness of W. J. Pearson to the grantee. May 19, 1922, the Citizens Trust & Savings Bank conveyed the lands to the Pearson Ranch Company. The minutes of the company of May 10, 1922, show that the Pearson Ranch Company agreed to purchase all of the Glenn County lands and the personal property thereon for 4,999 shares of its capital stock. The minutes of May 19, 1922, show that in pursuance of such agreement the company issued to W. J. Pearson 4,749 shares of its stock and the remaining shares to other persons. July 3, 1923, W. J. Pearson formally transferred 4,748 shares of the stock standing in his name to the defendant. January 28, 1924, the defendant herein

commenced an action to quiet her title to certain real property in the county of Los Angeles. The defendant therein, a creditor of W. J. Pearson, alleged that the property there in question was either community property or the separate property of W. J. Pearson. In a deposition taken in that action April 18, 1924, defendant herein testified as follows: "Q. At the time of your marriage, were you the owner of any property? . . . A. Yes, I was. . . . I must have had about in the neighborhood of $20,000. . . . I was very young at the time, and I let Mr. Pearson take care of all my money for me. . . . I allowed Mr. Pearson to handle it for me, and I never paid very much attention to how he did handle it. . . . . Q. Did he (your father) give you other sums since your marriage? A. Yes, he has. . . . In different ways; sometimes one way and sometimes another. . . . This was before I came to Los Angeles that it amounted to about $20,000. Q. Since you came to Los Angeles, has he given you some more? A. Yes, he has. . . . It was at different times. . . . At one time he gave me $6,000. . . . I used that in buying the house at Seventh and New Hampshire, . . . where I live now. . . . Q. Is that one of the properties that is described in the complaint? . . . A. It is. . . . Q. When was the ranch in Glenn County acquired? . . . A. . . . 1915 it was taken in Mr. Pearson's name. . . . Mr. Pearson gave it to me in January, 1916. . . . I deeded it to Page and White. . . . Q. What did Page and White give you for this ranch? A. They gave me a trust deed back on the ranch and some property in Oakland. . . . Q. Do you remember when the Pearson Ranch Company was organized? . . . A. I think it was in 1921. Q. Were you one of the stockholders of that company? A. No, I was not. Q. Did you have any interest in that company? A. I thought I did. Q. In what respect did you think you had an interest? A. Well, I thought I still had all of the interest in the ranch. . . . Q. Did you at any time after the ranch was deeded to Page and White claim to be the owner of the ranch? A. Yes. Q. Out of what circumstances did your claim of ownership arise after it was deeded to Page and White? A. Well, I held a trust deed." A few days later, at the time the defendant signed the deposition, she struck out this answer and answered the question as follows: "I claimed it under an assignment of stock." The deposition

was read by the defendant in her attorney's office before she signed it and no other correction was made therein. The deposition continues as follows: "Q. Was it necessary for you to foreclose on the trust deed? A. It was. Q. And you did foreclose on the trust deed? A. Yes. Q. At the time you foreclosed on the trust deed, did you bid the ranch in? A. Mr. Pearson bid it in for me. Q. And after that did you deed it to anybody? A. Yes. . . . To the Citizens Trust & Savings Bank. . . . Q. For what purpose did you deed it to the Citizens Trust & Savings Bank? A. Mr. Pearson owed the Citizens Trust & Savings Bank some money and I had guaranteed this money that he owed them; I had given my personal guarantee, and in order to cover that obligation I deeded the ranch to the Citizens Trust & Savings Bank. . . . Q. You say you never became a stockholder in the Pearson Ranch Company? A. Yes, I did later. Q. When did you become a stockholder of that company? A. In 1922. Q. How many shares of stock did you acquire at that time? A. I couldn't tell you the exact number; but more than 4,800 shares I believe. . . . Q. Who caused those shares to be put in your name? A. Mr. Pearson. Q. At your request? A. At my request, yes. Q. That was what time in 1922? A. I do not recall the month. Q. Do you remember whether it was the early part of the year or the latter part of the year? A. No, I do not. . . . Q. Did you sell the stock to anybody? A. No. . . . Q. You state in your complaint in this action that you are the owner of the property which I will briefly describe as the St. Francis Court? A. Yes, sir. Q. Who deeded that property to you? A. F. W. Hinyan. . . . Q. August 23, 1923? A. 1923, yes. Q. What did you give him for the property known as the St. Francis Court? A. The ranch in Glenn County. . . . Q. Did your husband participate in the negotiations? A. In advising me, he did. . . . Q. Did you transfer any of your stock to Mr. Hinyan in connection with this deal? A. No. Q. Did you transfer or deed to him anything at all—any property, real or personal, other than this ranch property? A. No. Q. Do you claim now that this property is your own property, this property known as the St. Francis Court? A. Yes, sir. Q. And that your husband has no interest in it at all? A. No, he has not. . . . Q. You

spoke of Messrs. Page and White as persons to whom you sold the ranch property. . . . They fell down on making payments to you, and you foreclosed on that property there? A. Yes, sir.'' Alva F. Page testified that at the time he and White purchased the Glenn County lands they gave ''Mr. and Mrs. Pearson a second mortgage of $106,000, which Mr. Pearson took in his own name,'' and that Mr. Pearson, in the presence of the defendant, ''said the reason he was taking it in his own name was because it was more or less unfinished business and he didn't want Mrs. Pearson to take any in her name that was in any way hazardous; in other words, he didn't want her to get behind any mortgage, he didn't want her to take this mortgage until it was paid off and cleaned up, and in better shape.'' Rex B. Goodcell testified that, in the latter part of 1921 or early in 1922, Mrs. Pearson ''spoke to me then about a little trouble she was having with Mr. Pearson; that in the event it terminated in a separation between them, all she would have left would be the ranch and the home place.''

The defendant testified at the trial that she operated the Glenn County ranch from January, 1916, until it was sold to Page and White in 1919; that her husband advanced money for the operation of the ranch during that time and to a large extent gave up his own business and devoted his time to managing the ranch; that upon the sale of the land to Page and White she and her husband made an equitable division of the proceeds of the sale; that the property then conveyed to her husband by Page and White and the note for $106,000 constituted his part of the division and that she had no interest therein; that her husband did not purchase the land for her at the trustee's sale but for himself; that she never owned any stock in the corporation prior to July 3, 1923, when her husband transferred his stock to her in settlement of an indebtedness of $80,000 then owing by him to her. Her husband testified to substantially the same effect. The defendant also testified that at the time her deposition was taken she ''got out of a sick bed to come down to give that testimony,'' that her ''mind was confused.'' On cross-examination, however, she testified that, a few days after the deposition was taken, ''it was read over and corrected by me in Mr. Gilbert's office with Mr.

Gilbert present. We went over it, and after that I signed it. . . . Nobody was present representing Aronson and Company at the time I went over the deposition with Mr. Gilbert.'' Mr. Gilbert was acting as attorney for the defendant herein at the time the deposition was taken, as well as at the trial of this action. Under such circumstances, it is a justifiable inference that the statements contained in the deposition were not the result of misapprehension or inadvertence. It was within the exclusive province of the trial court to determine whether the defendant's testimony set out in the deposition or that given at the trial correctly. states the facts. It must be presumed in support of the findings and judgment that the court believed the testimony contained in the deposition rather than that given by the defendant at the trial. The most that can be said then in favor of appellant is that conflicting inferences can be drawn from the evidence upon the issue as to her alleged ownership of the stock. [4] But where the evidence is sufficient to support conflicting inferences, the finding of the trial court either way thereon is conclusive on appeal. The evidence must be viewed in the light most favorable to the support of the findings and judgment. So viewing it, it appears therefrom that the defendant "allowed Mr. Pearson to handle" her money for her; that she "never paid much attention to how he did handle it"; that Page and White gave the defendant, in her husband's name, "a trust deed back on the ranch"; that when the land was sold under the trust deed, the husband "bid it in" for her; that thereafter and prior to the conveyance of the land to the corporation she stated, in effect, to Goodcell, that the ranch was her separate property; that the only property acquired by the corporation was the ranch and the personal property thereon, in exchange for which the corporation gave all but one share of its capital stock, the certificates for 4,749 shares thereof being made out in the name of the husband; that the defendant thought that she "still had all of the interest in the ranch"; and that after the indebtedness involved herein had been incurred the husband made a formal transfer of the stock to the defendant. If the facts were as so stated, then it may be inferred therefrom that the defendant was the equitable owner of the ranch at the

time it was conveyed to the corporation and, at all times thereafter, the equitable owner of the stock standing in the name of her husband on the books of the corporation. [5] Section 322 of the Civil Code provides: "Each stockholder of a corporation is individually and personally liable for such proportion of all its debts and liabilities contracted or incurred during the time he was a stockholder as the amount of stock or shares owned by him bears to the whole of the subscribed capital stock or shares of the corporation. . . . The term stockholder, as used in this section applies not only to such persons as appear by the books of the corporation to be such, but also to every equitable owner of stock, although the same appears on the books in the name of another."

The court found, in the language of the complaint, "That at the time the said bonds, and all of them, were executed and delivered the defendant . . . was the owner and holder of four thousand seven hundred forty-nine shares of the subscribed capital stock of said Pearson Ranch Company." Appellant contends that this finding is but a conclusion of law and that it "is insufficient for the reason that it does not show how or in what manner appellant was the owner of said stock at the time in question." The corresponding allegation of the complaint is the only averment therein relative to the defendant's ownership of the stock, and the defendant's answer thereto consists only of a specific denial of such allegation. "Except . . . when the evidentiary facts stated are necessarily inconsistent therewith, such a general allegation of ownership is always recognized as an allegation of the ultimate fact, and a complaint containing it sufficiently pleads plaintiff's ownership." (*Robinson* v. *City of Glendale,* 182 Cal. 211, 214 [187 Pac. 741].) "It has been frequently observed that findings should be of ultimate facts, and that it is unnecessary to state the probative or evidentiary facts, for a finding of ultimate facts includes a finding of all the probative facts necessary to sustain it." (24 Cal. Jur. 968.) [6] Upon an issue raised by a mere allegation of ownership and the denial thereof, "a finding upon the fact of title or ownership is good without a finding of the particular facts upon which

such title or want of title depends.''  (*Cooley* v. *Miller & Lux*, 156 Cal. 510, 523 [105 Pac. 981].)

The judgment is affirmed.

Richards, J., Waste, C. J., Shenk, J., and Seawell, J., concurred.

Rehearing denied.