[Civ. No. 13968.   Second Dist., Div. One.   Apr. 12, 1943.]

FRANCES HETTICK KOPNER, Respondent, v. ETHEL R. FREAD, Appellant.

Pierson & Block for Appellant.

Austin & Austin for Respondent.

DORAN, J.—This is an appeal from a judgment in an action to quiet title to a certain parcel of real property and to a promissory note. The action was instituted by respondent as the surviving spouse of Albert R. Kopner, deceased, alleging that the whole of the estate of said deceased was assigned by the probate court to respondent and that appellant claimed and asserted an interest in the particular real and personal property here in question adverse to respondent. Appellant, a former wife of the deceased, interposed a cross-complaint seeking to have a resulting trust declared in her favor with respect to the property in question. After hearing the evidence the trial court found in favor of respondent and entered judgment decreeing respondent to be the owner of the property.

Appellant married the said Albert Kopner in the year 1919. The property here in question was acquired by appellant and Kopner during their marriage. The real property was acquired as their community property and the promissory note was made to them as joint tenants, having been received by appellant and Kopner on the sale of certain real property held jointly. Appellant and Kopner separated in the month of March, 1939, and entered into a property settlement agreement under date of March 6, 1939. By the terms of this agreement Kopner expressly conveyed to appellant all of Kopner's right, title and interest in the real property in question.

This agreement recited that ''it is the desire of both the husband and wife hereto to settle and determine their respective claims for support and maintenance and to determine their respective property rights for the present and for the future and to release each other of and from all claims of every kind and character except as specifically herein provided.'' The right, title and interest of the respective spouses in other specific property was disposed of by the provisions of the agreement, and the agreement also contained the following provision, quoted in part:

''EIGHTH: The wife specifically agrees that all of the property and interests of every kind whatsoever, real, per-

sonal and mixed, regardless of where situated, now belonging to or held by and/or in the name of the husband, whether pursuant to this agreement or otherwise, or which may hereafter be acquired by him in any manner whatsoever, including his future earnings, is and shall be deemed to be and constitute his sole and separate property, and the wife hereby expressly recognizes all of such property and interests as such separate property of the husband, free and clear of any claims of the wife, that the same constitutes community property, and free and clear of any and every claim, demand, right, title, interest, or apparent interest therein of the wife, or which may be made or asserted by her, now or hereafter, whether arising out of such marriage relation or under the laws with respect to community property or otherwise, and the wife hereby expressly disclaims, waives, releases, surrenders, relinquishes and forever quitclaims unto and in favor of the husband any and all such claims, demands, right, title, estate, interest and/or apparent interest, community or otherwise, which she may have, make or assert, now or hereafter, in or to any such property, including future earnings of the husband. . . . '' A like provision was included on the part of the husband in favor of the wife.

By the terms of the agreement the wife transferred to the husband all of her title in a certain automobile and all of her title and interest in a certain cafe business, as well as all of her right and title in and to the cash in a certain bank account. By the agreement, also, the wife was given custody. of the child of the parties, under certain conditions, the husband to pay the wife for the support, maintenance and education of said minor child. Both husband and wife waived right of inheritance in the other's estate. The wife waived attorney's fees, court costs, alimony, support or maintenance, except as provided in the agreement; and it was provided that the property settlement agreement might be incorporated into and become part of any decree of divorce thereafter entered. An interlocutory judgment of divorce was entered in an action between appellant and Kopner on March 30, 1939.

On May 19, 1939, appellant executed and delivered to Kopner the following instrument:

"May 17, 1939

"For value received I hereby sell and assign all my right, title and equity in house and lot and furnishings at 713 So.

Mayo Ave., Compton, Calif., described as follows:

"Lot 15 of Tract 6187 County of Los Angeles, State of California as per map recorded in book 65, of page 85 of maps in the office of the County Recorder of said County:

"All this I hereby agree to transfer to Albert R. Kopner.

"ETHEL R. KOPNER"

This instrument was acknowledged before a notary. The property described therein is the same real property which had been assigned to appellant by the provisions of the property settlement agreement referred to above. The circumstances under which appellant executed the instrument above quoted were related by appellant at the trial as follows:

"I had been working at the cafe after my divorce, working regular shift just like any of the rest of them, and it just didn't work out like he thought it was going to, that' was the understanding at the time of the divorce that I was to stay there and continue to work. I decided I was going to go out and stay with my mother so I told him on this date I was going to quit, for him to get somebody else to take my place. He said, 'You had better make some arrangements to take care of that property down there if I get a chance to sell it.' I was working in the dining room. He told me he would draw up some kind of paper. He wrote it up, typed it up and brought it back with pen and ink and I just glanced at it and signed it. He said he would never use it unless he got my jewelry and if he did sell the property it would be only after he had been able to give my jewelry back to me."

The substance of appellant's cross-complaint is as follows. The facts as to the marriage and divorce of appellant and Kopner are set forth, alleging that the final decree of divorce was entered April 23, 1940. The execution of the property settlement agreement, the terms thereof regarding the real property in question, and the delivery of the promissory note to appellant and Kopner are alleged. It is then alleged that no disposition was made of said note and that the note was not mentioned in the property settlement agreement. It is next alleged that during or about the month of October, 1938, Kopner, in order to secure certain sums of money, pledged as security therefor certain valuable jewelry which was the separate property of appellant; and that at the time of the execution of the property settlement agreement referred to, the said jewelry had not been redeemed from the

pledge. That after appellant had become the owner of the said real property by virtue of the property settlement agreement, appellant and Kopner entered into an oral agreement, whereby the said Kopner agreed to redeem from said pledge the jewelry and return the same to appellant, and appellant in consideration thereof agreed that she would deed to said Kopner the said real property hereinabove described; but that Kopner should not use the said deed, record the same, or be deemed the owner of said real property unless and until he should secure the return of said jewelry to appellant; and that in the event the said Kopner could not return said jewelry to appellant, he should return said deed to appellant and the same should be of no force or effect. It is then stated that the said Kopner did not during his lifetime return the said jewelry to appellant, nor return the said deed to her; but that he did not cause the deed to be recorded. That Kopner died on July 9, 1941, and that appellant is informed and believes that the said deed was caused to be recorded by respondent's attorneys. The marriage of Kopner with respondent is then alleged, together with the disposition of Kopner's estate through assignment thereof to respondent by the probate court. Appellant than claims ownership in the real and personal property above mentioned and prays for a decree accordingly.

At the trial the only testimony regarding the alleged agreement concerning the jewelry was that of appellant. Respondent has pointed out several instances wherein the evidence is in conflict or inconsistent with the testimony of appellant as to the oral agreement concerning the pledged jewelry. It should also be pointed out that in considering the evidence on this point a question naturally arises as to why appellant should have agreed to convey her real property to Kopner in exchange for her jewelry, when Kopner was quite plainly already obligated to return the jewelry to her. The trial court found that it was not true that appellant had conveyed her real property to Kopner in consideration of an agreement on his part to redeem appellant's jewelry; but that the real property was conveyed by appellant to Kopner for a valuable consideration.

Appellant's sole argument for a reversal of the judgment as to the real property is based upon the proposition that it is clearly established by the law of this state that the violation of an oral promise to reconvey property creates an involuntary trust. In thus making her argument, appellant apparently ignores the fact that the trial court found that

no such oral promise was made. In the light of the record, this finding is supported by the evidence. The question of the credibility of the witnesses was one for the trial court to decide. Appellant does not otherwise attack the court's finding that the deed passed for a valuable consideration, nor has appellant attempted to show that no consideration was otherwise given for the deed. Appellant's claim to the real property was based upon a specific charge that Kopner had failed to live up to his promise to redeem the jewelry. This was the "unfair advantage" upon which appellant based her cross-complaint. Since the court found upon sufficient evidence that such an unfair advantage was not taken of appellant, there is nothing left upon which to base a presumption of undue influence. ■ The mere existence of the marital relation does not raise a presumption of fraud or undue influence in connection with contracts and conveyances made between the spouses. *Dimond* v. *Sanderson,* 103 Cal. 97 [37 P. 189]; *Donze* v. *Donze,* 88 Cal.App. 769, 775 [264 P. 294]; 3 Cal.Jur. Ten Year Supp. 646, Community Property, sec. 131.

■ Appellant, however, contends that the instrument above quoted does not show an intention to carry the transfer of the realty into present effect, but cites no authority for her contention. This contention is not sustained by authority on the question. (See 9 Cal.Jur., p. 96, Deeds, sec. 3; idem, p. 107, sec. 13.) In order to ascertain the intention of the parties the instrument must be read as a whole.

■ As to the promissory note, the trial court found that it was not true that no disposition was made thereof during the lifetime of said Albert R. Kopner; that by the terms of the property settlement agreement referred to in the cross-complaint, said note was assigned to Kopner as his separate property. In view of the terms of the property settlement agreement above quoted, the question of title to the note was purely one of fact. The agreement plainly provided that appellant thereby assigned all her interest in property of every kind which was held by Kopner at the time of the signing of the agreement. If the note in question were then held by Kopner, the note was by the terms of the agreement assigned to him as his separate property.

Regarding the note, appellant, called as a witness on behalf of the plaintiff pursuant to the provisions of section 2055 of the Code of Civil Procedure, testified as follows: "Q. This note that is in question here signed by Mrs. Van Zile, where was that note kept all this time? A. As far as I know, it

was in the bank, at least the payments were made directly to the bank. Q. That was in Mr. Kopner's possession, was it not? A. It was both of us, his and mine. Q. After the separation what happened to the note? A. There was nothing ever done to it. I talked to him about it and he said the bank had taken it for security for some other note that was there at the bank and until that was paid out it would stay there and after that he would have it credited to my savings account at the bank. Q. That was a note owned by Mr. Kopner, was it not? A. Him and me. Q. Have you ever had possession of the Van Zile note? A. Yes, at the time it was first made out, sure. Q. You had possession of it? A. Sure, it was there at the cafe, but I believe it was taken to the bank, I am not positive. Q. Did you take it to the bank? A. No. Q. Did Mr. Kopner take it to the bank? A. I am not positive if it was at the bank or the cafe, but I believe it was at the bank. Q. But at any event you did not have possession of it at the time you executed the property settlement agreement? A. No, I did not. Q. It was then either at the cafe or the bank? A. Yes, sir.''

From the foregoing testimony of appellant it might be inferred that her husband, Albert R. Kopner, held the note at the time of the signing of the property settlement agreement. It is at least plain that appellant did not have possession of the note when the property agreement was entered into; and it is also apparent that Kopner had control over the note, using it as he saw fit. When the terms of the property settlement are read in the light of this testimony it cannot be said that the findings of the trial court with respect to the note are not sustained by the evidence before the trial court. Moreover, the language of the property settlement agreement evinces an intent on the part of husband and wife to dispose of all their property interests between them, in the manner set forth in the agreement. Another circumstance, which the trial court might properly have considered in making its findings as to both the real and personal property involved, was that appellant does not appear to have raised any serious question of title to this property during the period of over two years which elapsed between the time when she executed the deed, and the property settlement agreement, and the date of Kopner's death.

For the foregoing reasons the judgment is affirmed.

York, P. J., and White, J., concurred.