[Civ. No. 17215. Second Dist., Div. Two. Mar. 24, 1950.]

Estate of LEE ELLEN CLAUSSENIUS, Deceased. CARL H. CLAUSSENIUS, Appellant, v. PENROD OTIS MUSSER et al., Respondents.

[Civ. No. 17216. Second Dist., Div. Two. Mar. 24, 1950.]

Estate of LEE ELLEN CLAUSSENIUS, Deceased. CARL H. CLAUSSENIUS, Respondent, v. PENROD OTIS MUSSER et al., Appellants.

Homer C. Compton, Rollin L. McNitt and Edythe Jacobs for Appellant in Civ. No. 17215 and for Respondent in Civ. No. 17216.

Dora R. Hyman, Don M. Kitzmiller and Norman Newmark for Respondents in Civ. No. 17215 and for Appellants in Civ. No. 17216.

MOORE, P. J.—Two appeals are presented together. The first (Civ. No. 17215) is from portions of a judgment rejecting certain claims and contentions of Carl Claussenius, surviving husband, herein referred to as "Carl" or "executor." The second is from an order setting aside a probate homestead for Carl following his controversy with Penrod and Ralph Musser, sons of decedent, herein referred to as "the Mussers."

The first judgment resulted from the Mussers' contest of and objections to the first account of executor wherein he claimed that "all the property" described in the inventory was purchased by him "with his separate money, which was derived from the estate of his sister . . . on the 8th of November, 1936, from which estate he received approximately $200,000." He followed this with a declaration of separate ownership as

to each of the several items he designated, excepting certain articles belonging to decedent at the time of her marriage. Also, he filed a creditor's claim for $5,000 and interest which was disallowed.

Carl and decedent were married April 28, 1937. On February 22 of the same year they executed an agreement wherein it was provided that in the event of divorce, decedent would make no claim against Carl for alimony or maintenance, but in lieu thereof would accept a settled estate consisting of securities of the approximate value of $25,000 to be provided by Carl out of his separate funds and to be vested by him in specified trustees for the purposes stated in the agreement. In December, 1937, Carl acquired two parcels of real property, herein referred to as Lots 48 and 49. In January following, decedent executed a deed quitclaming her interest in such realty. In the following month they made another contract cancelling their prenuptial agreement. But in May (three months later) they executed another agreement providing that all property acquired by either of them prior to their marriage should continue to be the separate property of the owner at marriage and in the event of a separation or divorce neither should be entitled to receive out of such property any sums for alimony or support and maintenance. Simultaneously with such agreement Carl transferred certain corporate stocks to his wife.

In August, 1941, Carl placed the title to Lots 48 and 49 in joint tenancy with decedent and one month later they executed still another contract wherein it was recited that Carl had not delivered the stocks specified in the agreement of May, 1938, that he should convey to decedent by grant deed his interest in all the properties then owned by the parties in joint tenancy but that decedent would provide for Carl's interest from the income derived from such property and that decedent should in no way encumber or dispose of any part of such property without prior written consent of Carl. On the same day the latter executed a grant deed conveying to decedent all his real property and both executed their last wills. Decedent's will devised one-half of the real property to her sons. Contrary to the eager contentions of Carl following a trial of the objections to his first account the court found that Parcels 48 and 49 as well as the income therefrom were the separate property of decedent at the time of her death. Still claiming that it was his separate property, Carl now demands a reversal of the judgment.

Carl's first contention is that the probate court has power to apply equitable principles (*Estate of Reade,* 31 Cal.2d 669, 672 [191 P.2d 745] ; *Estate of Evans,* 62 Cal.App.2d 249, 256 [144 P.2d 625]) and that notwithstanding its possession of such power the court below failed to apply those principles in determining title to Parcels 48 and 49 but based its determination purely on the basis of legal presumptions arising from the deed conveying the property to decedent. The answer to that contention is that the court followed its findings of fact and its judgment was the necessary sequitur.

Basing his argument on the finding that the consideration for the transfer of the two parcels of realty was the satisfaction and discharge of his obligation under the 1938 agreement Carl contends that the latter document is void as contrary to public policy and that therefore he is entitled to have the property impressed with a resulting trust in his favor or to recover the property transferred. Notwithstanding the numerous arguments made by the parties to this appeal as to the validity or invalidity of the 1938 contract, its legality is of no vital consequence to a determination of this appeal. Assuming the contract to be void and that there was consequently no consideration for Carl's transfer, he cannot prevail. If that document alone had been made, decedent would have been unable to enforce it by reason of the fact that the promise to convey the property was founded upon an illegal consideration. But such is not the fact. Here a deed was executed and the title of the property was vested in decedent. Therefore, it is the deed conveying the property that constitutes the contract behind which the estate of decedent is barricaded. When property is conveyed for an illegal consideration it is still conveyed. No consideration is necessary to the validity of a voluntary transfer of property by deed. (Civ. Code, § 1040.) Where there has been a total failure of consideration the grantor cannot recover the property. (*Lavely* v. *Nonemaker,* 212 Cal. 380, 383 [298 P. 976] ; *Lawrence* v. *Gayetty,* 78 Cal. 126, 133 [20 P. 382, 12 Am.St.Rep. 29].)

No authority has been cited and none is known to support Carl's contention that he is entitled to have the property impressed with a resulting trust in his favor. He himself made the conveyance. ▆▆▆ The want or failure of consideration does not raise a resulting trust. The voluntary deed made deliberately and without mistake or contrivance is none the less binding upon the grantor. (*Tillaux* v. *Tillaux,* 115 Cal.

663, 668 [47 P. 691]; Tiffany on Real Property, 3d ed., § 262.)

Carl contends that the conveyance of the real property was procured by the fraud of decedent and her undue influence. He bases such contention primarily upon the confidential relationship of husband and wife with the resulting presumptions of undue influence. This he argues is sufficient to warrant the conclusion of a constructive trust as against decedent who took advantage of the relationship. The Mussers urge that this theory is raised for the first time and should not be considered.

When a case is tried on the theory that a material issue is raised by the pleadings and evidence is introduced thereon without objection the unsuccessful party will not be permitted later to contend that such issue was not raised. (*Priebe* v. *Sinclair*, 90 Cal.App.2d 79, 86 [202 P.2d 577]; *Lande* v. *Southern Cal. Freight Lines*, 85 Cal.App.2d 416, 419 [193 P.2d 144]; *McClure* v. *Donovan*, 33 Cal.2d 717, 731 [205 P.2d 17].) The case was apparently tried on the theory that fraud was effectively pleaded by the allegations in the executor's first account that decedent "further represented to petitioner that she would reconvey said property to decedent [sic] upon his request; that relying upon said statements, petitioner was induced by decedent to, and did, execute and [sic] additional agreement dated September 11, 1941 . . . that decedent held said property in trust for petitioner."

While recognizing the presumption that any property conveyed to a wife by the deed of her husband is her separate property (Civ. Code, § 164) he contends that such presumption is rebuttable. (*Horsman* v. *Maden*, 48 Cal.App.2d 635, 640 [120 P.2d 92].) It may be, but the trial court did not find that such presumption was rebutted.

It is the rule that the burden is on the husband to establish a resulting trust in his favor by proving that he did not by his deed intend to make a gift to his wife. (*Altramano* v. *Swan*, 20 Cal.2d 622, 628 [128 P.2d 353].) Carl relies upon the finding that the consideration for the conveyance was the discharge of his obligation under the 1938 contract and therefore asserts that notwithstanding the recital that the lots are conveyed to the wife as her separate property, evidence was admissible to establish the true nature of the transaction. (*Huber* v. *Huber*, 27 Cal.2d 784, 788 [167 P.2d 708]; *Tomaier* v. *Tomaier*, 23 Cal.2d 754, 757 [146 P.2d 905]; *Cox* v. *Cox*,

82 Cal.App.2d 867, 870 [187 P.2d 23].)　　▪▪▪▪　But despite Carl's evidence and the rule that required the Mussers to prove that the deed was not obtained by undue influence (Civ. Code, §§ 158, 2235; *Dale* v. *Dale,* 87 Cal.App. 359, 364 [262 P. 339]) the court found (1) that Carl intended that the two lots should after September 11, 1941, be the separate property of his wife and (2) that she never held them in trust for Carl. Such finding is supported by Civil Code, section 164. The language of the deed makes an absolute conveyance and the agreement made six months subsequently modified the terms of the loans and recited decedent to be the owner. The form of a deed may alone support a finding (*Cox* v. *Cox, supra*) and the mere existence of the marital relation does not raise a presumption of fraud or undue influence in conveyances from a husband to his wife. (*Kopner* v. *Fread,* 58 Cal.App.2d 114, 119 [135 P.2d 634].) In *Lyttle* v. *Fickling,* 72 Cal.App.2d 383 [164 P.2d 842], cited by Carl, while a trust was imposed on the wife's property for the grantor's benefit, the court found the wife to have expressly agreed to reconvey the property on demand.

Carl attacks the finding that he intended to convey the lots to decedent as her separate property, that there was no promise to reconvey them on Carl's request, and that they were not conveyed on a representation of decedent that the conveyance was to be made for the reason that Carl's mining activities might result in losses not covered by insurance which would imperil Carl's ownership of the two lots. Such findings are abundantly supported not only by the presumptions arising from the deed but also by the testimony of Attorney Irwin which proved the probative facts contained in the findings.

▪▪▪▪　Carl attacks the finding that the diamond rings were the separate property of decedent. He alleged in his first account that they were formerly his own, that he had given them to his wife and that thereupon they became community property. In support of his claim he cites section 164 of the Civil Code and *Estate of Walsh,* 66 Cal.App.2d 704 [152 P.2d 750]. Both authorities bear out his thesis in the abstract. But the court was privileged to infer from the nature of the chattels, the relationship of the parties, and the circumstances of the delivery, the reasonable deduction that a gift was intended. Such conclusion finds support in Carl's pleading which admits that he had "given" the rings to decedent and in his testimony that he "gave" the rings to her in view of

section 162 of the Civil Code.* Support is also found in the statement of Carl's counsel, to wit, "We feel that the diamond rings with the exception of the engagement ring are community property." That utterance clearly implied that the last above mentioned ring was considered decedent's separate property. Carl's contention that because he gave the rings to his wife they were community property is supported by no authority It is statutory law that everything acquired by a wife after marriage as a gift is her separate property.

### THE $5,000 CLAIM WAS BARRED

██ The court found that Carl's claim for $5,000 was based upon decedent's receipt for that sum and her agreement to repay "the same in a manner agreeable to said Carl" at the time the stocks mentioned in the agreement of May 25, 1938, "shall be released and ready for delivery to me"; none of such securities was ever delivered to decedent; under the agreement of September 11, 1941, Carl's obligation to convey his interest in the lots was substituted for his promise to deliver such securities; the lots were conveyed to decedent September 11, 1941, and the latter's obligation to repay the $5,000 became due and matured on that day; therefore, Carl's claim became barred under subdivision 1 of section 337 of the Code of Civil Procedure. By virtue of such finding the court was obliged to disallow the claim. The extended arguments attacking and supporting such finding are unavailing in view of the writings and the inferences reasonably drawn from all the transactions. (*Aronson & Co.* v. *Pearson,* 199 Cal. 295, 303 [249 P. 191].) It was not an unreasonable inference that the conveyance of the two lots was a substitution for the corporate stocks.

### LOANS ON LOTS 48 AND 49

Carl attacks findings 12 and 13 as being without evidentiary support. The findings are that decedent did not breach the agreement of September 11, 1941, by executing a trust deed on a portion of the property to secure a loan in the principal sum of $7,000 and that the loan was made with Carl's full knowledge and consent in writing; that the agreement of September 11, 1941, was not breached by decedent's execution of her will which was likewise executed with Carl's full knowledge and consent. ██ It will be remembered that by the

---

*"All property of the wife, owned by her before marriage, and that acquired afterwards by gift, bequest, devise, or descent, with the rents, issues, and profits thereof, is her separate property. The wife may, without the consent of her husband, convey her separate property."

contract of September 11, 1941,* Mrs. Clausennius agreed that she would not mortgage, sell or otherwise encumber or dispose of any part of the real property without prior written consent of her husband. To show a compliance with such consent the Mussers offered to prove by Ralph Musser the contents of the purported letter from Carl to his wife. Before offering the testimony of Ralph, they introduced Carl's testimony to the effect that he had never written any such letter and therefore did not have the letter which Ralph claimed to have seen.† The objection to Ralph's testimony on the ground

---

* (Clerk's Transcript, Civ. No. 17215, p. 21.)

"Whereas, First Party has been and is unable to assign, transfer and set over to Second Party the corporation stocks specified in subdivision 2 of that certain Property Settlement Contract executed by said parties, dated May 25, 1938; and

"Whereas First Party and Second Party are now the owners, as joint tenants, of the real property hereinafter particularly described:

"Now, Therefore, the parties hereto mutually covenant and agree as follows:

"1. First Party shall concurrently with the execution hereof, execute and deliver to Second Party a grant deed conveying to Second Party all of his rights, title and interest in and to the real property now owned as aforesaid by First Party and Second Party, as joint tenants, so that thereby Second Party shall become and be henceforth the sole owner thereof as her separate property.

"2. Second Party shall be entitled at all times to reside in the one of the aforesaid real property which shall be agreed upon and selected by the parties hereto as their home, and, in addition thereto, Second Party shall provide and pay from the net income derived by her from said properties the amount of money required to provide First Party with all reasonable necessaries for his comfortable support; it being understood and agreed, however, that the amount which Second Party shall be required to provide and pay as aforesaid shall not in any event exceed one-half ($\frac{1}{2}$) of said net income.

"3. In order to assure the faithful performance by Second Party of her obligations hereunder, and solely as security to First Party therefor, Second Party shall not mortgage, sell or otherwise encumber or dispose of any part of the aforesaid real property without the prior written consent of First Party thereto.

"Said real property is particularly described as follows: Los Angeles, State of California, described as: . . .

"Lots Forty-eight (48) Forty-nine (49) and Sixty-six (66), Tract 4588 . . .

"In Witness Whereof said parties hereto have hereunto affixed their signatures."

†The following proceedings occurred while Mr. Claussenius was on the stand:

"Redirect Examination

"By Mr. Kitzmiller:

"Q. Have you the original of the letter written by yourself to your wife in 1946, which letter, among other things, referred to the boys

that notice to produce had not been served on Carl is without merit. It follows as a matter of course that if Carl had never written the document, service of notice to produce would have been an empty ceremony. There was no error in admitting Ralph's testimony as to the contents of a letter which he testified he had seen. (*Jones* v. *Jones,* 38 Cal. 584, 586.)

### CARL'S SUPPORT FROM THE REAL PROPERTY

Carl contends that decedent's covenant to support him out of the income from the real property should be enforced against respondents. No good reason is advanced why the court should have made such ruling. However, Carl cites and relies upon *Marra* v. *Aetna Construction Co.,* 15 Cal. 2d 375, 378 [101 P.2d 490], and *Theu* v. *Theu,* 35 Cal.App.2d 691 [96 P.2d 826]. In those authorities covenants not running with the land were enforced against a transferee of the covenantor who took with knowledge of the covenant. But in those cases the nature of the covenant coupled with the intention of the parties and the result of the covenants not being enforced was considered such that equity could not in good conscience withhold relief. In the instant situation, however, decedent willed one-half interest in the property to her husband for the very purpose of providing for his support after her death.

Miscellaneous other findings are attacked by Carl as being unsupported by the evidence. For illustration: finding 6 that it was not true that appellant had received $200,000 from his sister's estate; finding 5 that the real property was purchased in part with the separate monies of appellant; finding 8 that the agreements of May 25, 1938, and September 11, 1941, are valid and binding and each was made for an adequate consideration; finding 14 that prior to the deed of September 11, 1941, decedent was the absolute owner of an undivided one-half interest in the real property described in the deed; finding 9 that there were no representations or reasons for transferring Parcels 48 and 49 to decedent—these findings

---

coming up to the mine and working, and also referring to the financing of the repairs on the house?''

Objection was made that notice to produce the letter had not been served, etc.

''THE COURT: Of course, it would have been better if you had served a written demand prior to trial, but I think it is proper to inquire whether he has such a letter.

''THE WITNESS: I do not have such a letter. I never had such a letter. I never wrote such a letter.

''Q. BY MR. KITZMILLER: You never wrote such a letter?

''A. No.''

are attacked as being without substantial support. But even if they were all stricken or contrary findings substituted in lieu thereof the product would make no difference in the overall result.

## No Error in Order Awarding a Probate Homestead to Defendant

After the inventory had been filed Carl filed his petition for an order designating Lot 48 as a probate homestead for his use during his lifetime. Objections by the Mussers to the petition were overruled and the court set aside the homestead. The Mussers now contend that error was committed by the court in each of the following acts: (1) concluding that Carl was entitled to a homestead on Lot 48 for his lifetime or at all; (2) refusing to reopen the probate proceeding in order that the Mussers might prove the value of Carl's mine; (3) excluding testimony offered by the Mussers to prove that Carl agreed that in consideration for decedent's executing her will of September 11, 1941, he would take his property rights or interests provided for him in such will in lieu of all other rights or interests which he might have after decedent's death with respect to real property including Lot 48; (4) overruling of objections to the petition for probate homestead.

The order was in all respects valid. It is mandatory upon proper application of a surviving spouse for the court to "select, designate and set apart" a homestead for the survivor, where the deceased was in possession of the property at the time of death. (Prob. Code, § 661.) There is no rule to control the court in the selection of a homestead. ▆▆ It must be governed by a sound discretion, the value of the homestead, the financial condition of the estate and the rights of creditors. But the demands of the family are paramount. (*Estate of Barkley*, 91 Cal.App. 388, 392 [267 P. 148].) The duration of the homestead is committed to the sound discretion of the court and the term will not be disturbed in the absence of a showing of discretion abused. (*Ibid., Estate of Firth*, 145 Cal. 236, 238 [78 P. 643].) Aside from the exercise of reasonableness in selecting a homestead the only restriction imposed is that if the homestead be selected from the separate property of decedent its duration must be for a limited period to be named in the order but the designated parcel remains subject to administration. (*Estate of Barkley, supra,* 391.) If the probate homestead may be carved out of the estate of the decedent (*Robson* v. *Meder*, 66 Cal.App.2d 47, 49 [151 P.2d 662]) and

if it cannot be defeated by an act of a testator (*Estate of Ettlinger*, 56 Cal.App.2d 603, 606 [132 P.2d 895]) then it cannot be defeated by the heirs of the decedent.

It is a policy underlying all homestead legislation to provide a place for the family and its surviving members where they may dwell in peace and serenity, conscious that it cannot be taken from them "either by reason of their own necessity or improvidence or from the importunity of their creditors." (*Estate of Kachigian*, 20 Cal.2d 787, 791 [128 P.2d 865].)

Upon filing of the petition for a homestead and posting of notices the court acquires jurisdiction. (*Stiebel* v. *Roberts*, 42 Cal.App.2d 434, 438 [109 P.2d 22].) Since there was no community estate of Carl and decedent, the homestead had to be selected from decedent's separate property. She had none other than Lots 48 and 49 which Carl out of his separate estate had conveyed to her by deed on September 11, 1941. In his account as her executor he had listed such realty not as parcels belonging to her estate but as his own separate property. The court having decided his claim adversely he found himself in the position of requesting the court to designate as a homestead for himself the very property he had already declared was his own. By reason of the resulting dilemma, the Mussers contend that the petition is defective. This affords no cause for confusion. Carl was entitled to select a homestead out of decedent's separate property since there was no community estate. The court having determined that Lot 48 was decedent's separate property in her lifetime, Carl was privileged to base his petition on the facts as determined by the court. After a hearing on the petition to set aside a homestead the court found that (1) after its determination on the objections to the executor's account that Lots 48 and 49 were the separate property of decedent in her lifetime the trial judge announced his intention of holding that Lot 48 was the separate property of decedent at her death; (2) no homestead had been selected and recorded by either during decedent's lifetime; and (3) there was no community property from which a homestead could be selected. Such facts met all the requirements for designating a probate homestead and the allegations thereof furnished basis for the jurisdiction of the court.

### No Waiver of Homestead

The Mussers contend that Carl waived his right to a probate homestead. They undertook to prove that he did so by the testimony of Attorney Irwin who allegedly would have

testified that in the course of a conversation with Carl and his wife it was agreed that in consideration of decedent's execution of her will (admitted to probate) he would take the property rights and interests provided for him in that instrument in lieu of all other rights or interests which he might at any time after decedent's death have with respect to certain real property including Lot 48 described in the deed and in the September, 1941, agreement. It is the rule of long-established usage that a statutory right such as a probate homestead should not be held to have been surrendered by an agreement of the spouses "except by clear and explicit language." (*Warner* v. *Warner*, 144 Cal. 615, 618 [78 P. 24]; *Estate of Whitney*, 171 Cal. 750, 756 [154 P. 855]; *Estate of Schwartz*, 79 Cal.App.2d 308, 309 [179 P.2d 868].) Where it is established that for a definite consideration paid for a surrender of one's statutory rights as the survivor of a marital partnership, the court will find no difficulty in concluding that such rights were waived, as in *Estate of Schwartz, supra*. But no such situation is found in the case at bar. There was here no equivalent of a homestead waiver in "clear and explicit language." In the first place there was no written waiver by him. How could proof be made of Carl's waiver of his homestead right without a writing? The asserted agreement on the part of decedent to devise the two lots and to make provision for Carl by will is rendered invalid by subdivision 6 of section 1624 [Civ. Code]. If decedent's promise was a nullity it could not become a consideration to support Carl's promise to waive his probate homestead. It has been removed from the ban of the cited statute only to the extent of its performance, to wit, the execution of the deed and the will. Considering those instruments as forming one agreement in writing then all prior oral negotiations are presumed to have been merged in it and oral evidence is inadmissible to add to or vary its terms. Parol evidence cannot add another term to an agreement if the writing contains nothing relating to the matter proposed by the offered parol proof. (*Hotchkiss* v. *Nelson R. Thomas Agency, ante*, pp. 154, 158 [214 P.2d 568].)

Not only was the Irwin testimony inadmissible under the statute of frauds but it is the law that the intention of the testator to require his beneficiary to elect whether to take under will or under statute must appear from the will itself. The terms of the will must clearly manifest the testator's intention to make the testamentary gift stand in lieu of the

beneficiary's legal rights. (*Estate of Ettlinger*, 73 Cal.App.2d 967, 970 [167 P.2d 738].)

The right to inherit is of statutory origin. No more can be said of the right to a probate homestead; but the latter right is superior to the right to inherit because the right of inheritance is subject to the right to a probate homestead. (*Estate of Whitney*, 171 Cal. 750 [154 P. 855]; *Estate of Bain*, 137 Cal.App. 547 [31 P.2d 211].)

There is another reason why the conversation witnessed by the attorney should not have been admitted. The offer of such proof is in its essence an effort to compel specific performance of an agreement on the part of Carl to waive a statutory right. Prior to the conversation he owned the property conveyed by his deed as his separate estate. Taking his alleged agreement at its face value it was to part with 100 per cent interest in the two lots in consideration of a promise by his donee to return to him at a subsequent time by her will only 50 per cent interest in the property. Such consideration must be measured as of the date of the purported agreement. So considered, no doubt could remain that it was inadequate to support specific performance. (*O'Connell* v. *Lampe*, 206 Cal. 282, 285 [274 P. 336]; *Drullinger* v. *Erskine*, 71 Cal.App.2d 492, 495 [163 P.2d 48].)

 The Mussers contend that Carl would be estopped from asserting the statute of frauds even if the waiver of a probate homestead were required to be in writing. There is here no basis for such claim. Carl could have conveyed or bequeathed all his property to a stranger even without a consideration. Neither decedent nor her children paid anything for the deed. All of them profited thereby, the wife directly, the sons, indirectly through decedent's will of one-half of the property to them. Inasmuch as no prejudice has been suffered no estoppel could arise.

Carl's alleged promise to waive the statutory right to a probate homestead as a part of the proposal did not have to be accepted by his wife. Of course, she could have accepted and enforced it had she written into her will a provision requiring him to elect whether he would take under the statute or the will. But conceding such conversation to have occurred, she may have decided that such requirement would be unfair to Carl and for that reason made no such demand in her will. Also, she and her attorney are presumed to have known the law, and knowing it the omission from the will of a requirement that Carl elect must be deemed her deliberate act. She wrote

only those things she was obligated to include in her will, namely, devised one-half to Carl and one-half to her children. From the foregoing considerations it is inescapable that the court's exclusion of the attorney's testimony was based upon solid ground. To have admitted it and possibly to have found in accordance therewith would have resulted in a gross injustice.

■ Carl was awarded a probate homestead on Lot 48 pursuant to statute. (Prob. Code, § 660 et seq.) His gift of the lot to his wife does not preclude his enjoyment thereof as a probate homestead. (*Estate of Woodburn,* 212 Cal. 683, 687 [300 P. 22].) He inserted no provision in the gift deed indicating that he would never occupy it, nor did he by act or word evince an intention merely to take under decedent's will. Since he could not be required to elect between the devise and his statutory right without her having so stipulated in her will (*Estate of Ettlinger, supra*) the record is destitute of any proof or principle to the effect that an award of the homestead was error. Moreover, her very knowledge that her power of testamentary disposition was subordinate to the court's power to order a probate homestead pursuant to section 660 was ever present with her and may be deemed to be evidence of her acquiescence, if not her manifest wish, that her husband have the homestead.

■ ■ The Mussers contend that decedent relied upon her husband's waiver of his homestead rights at the time of making her will. If Carl were some casual friend or a distant relative and as such had been made a devise to the extent of half interest in her estate there might be some basis for such contention. But he was her husband; he had property and had yielded to her wishes until he finally made a gift to her of all the properties which constitute her estate. No fact, not even a reasonable theory is suggested in support of the claim that she relied upon his waiver of the homestead. Neither the fact that he made her a gift or qualified as executor of her estate serves as a waiver of his right to a probate homestead (*Estate of Firth,* 145 Cal. 236, 239 [78 P. 643]) and there is no reasonable basis for decedent to have relied upon either as Carl's waiver. But if she had, such reliance would furnish no basis for a contract between the two that he waived his rights. She lost nothing by relying upon her understanding of his waiver. The substance of their contract is evidenced by the deed and the will. She took all his property; she in turn

bequeathed him one-half. If she relied upon anything tangible, it was his agreement to give her his two lots and in that she was not disappointed.

The Mussers contend that the award of the probate homestead for life was an abuse of discretion. There is no basis for such contention. Because of the gift of the lots and other gifts by Carl to decedent and because of his advanced years it was not an abuse of discretion for the court to set aside the homestead to Carl during his lifetime. (*Estate of Rosland*, 76 Cal.App.2d 709, 712 [173 P.2d 830].) No one is in position to determine that issue so well as the trial judge.

Finally, conceding it to have been error for the court to exclude the testimony of the attorney, no prejudice was caused thereby. All the estate of decedent had come as gifts from her husband. They had cost nothing to decedent. To allow him the use thereof for life was no more than should have been awarded. To deny him would have been to heap disappointment and possible suffering upon the Santa Claus of decedent's life. By reason of the court's order no injustice has been done. Under such circumstances the order should not be set aside because of the improper rejection of evidence since the record discloses that the asserted error has not resulted in a miscarriage of justice. (Const., art. VI, § 4½.)

Both judgments are affirmed.

Wilson, J., concurred.

McCOMB, J.—I concur as to affirmance of the judgment in action No. 17215 but I dissent from the affirmance of the judgment in action No. 17216 [awarding probate homestead].