[Civil No. 4414. Filed January 26, 1942.]

[121 Pac. (2d) 437.]

JESSE F. HENDERSON, Appellant, v. EVA C. HENDERSON, Appellee.

Mr. Lemuel P. Mathews and Mr. L. Verde Rhue, for Appellant.

Mr. Harlow H. Akers and Mr. John W. Murphy, for Appellee.

McALISTER, J.—Jesse F. Henderson brought an action for divorce upon the ground of cruelty against Eva C. Henderson to whom he was married on September 4, 1937, and in his complaint alleged that the property owned by them belonged to the community and asked that it be awarded to him. The defendant answered denying the charge of cruelty and that the property described in the complaint was community property and by way of cross-complaint set up facts showing that the plaintiff was guilty of cruelty toward her and that the property claimed by plaintiff to belong to the community was in fact her separate estate. The court granted the defendant a divorce on her cross-complaint and awarded her all the property involved in the action. The plaintiff appeals from this judgment and "from the whole thereof."

Both parties introduced testimony in support of their respective charges of cruelty and after hearing it the court accepted that of the defendant and

granted her a decree of divorce. It would serve no useful purpose to recite the testimony here and it is only necessary to say that it was sufficient to support the decree and such being the case, this court cannot do otherwise than affirm the order dissolving the bonds of matrimony.

The only error assigned on this phase of the case is that the defendant was not entitled to a divorce because her testimony was not corroborated by other evidence as required by section 27–804, Arizona Code 1939. There can be no question but that the acts of cruelty testified to by defendant disclose a cause of action upon that ground and while all of them were not corroborated, sufficient of them were to meet this requirement of the statute.

The principal questions presented by the appeal, however, relate to the manner in which the decree disposes of the property owned by the parties and in order to understand them a statement of the material facts regarding the acquisition and ownership of it is necessary. The record discloses that at the date of marriage the defendant was the owner of property of the value of more than $20,000 that had been distributed to her from the estate of her former husband, J. D. Rowe, who died in August, 1935, or had been bought with funds received by her from that source. In December, 1936, nearly a year before her marriage, she purchased the Bridge Auto Court at Wickenburg, Arizona, and paid $15,000 cash for it out of these funds and from that time on until her marriage operated it herself. About three weeks after their marriage, the plaintiff gave up his position in Miami, where he had been employed for some time by the Inspiration Copper Company, at a good salary, and went to Wickenburg to live with his wife, the defendant, at the Bridge Auto Court.

Sometime subsequent thereto the defendant purchased a lot in Wickenburg, consisting of about three-quarters of an acre, known as the Bass property, and some months after this transaction purchased four acres adjoining it, known as the Harmon property, the deeds to both parcels being taken in the name of the defendant and the plaintiff as grantees. These two pieces of real estate, comprising almost five acres, with the improvements on them, constitute what is termed throughout the record as the Aztec Motor Inn and Trailer Court, and were conveyed to the defendant and the plaintiff ''not as tenants in common and not as a community property estate but as joint tenants with right of survivorship,'' the deeds containing in addition this statement, signed by both grantees:

''The above deed is accepted and approved by the Grantees; it being the intention of the Grantees to acquire these premises as joint tenants with right of survivorship, and not as community property or as tenants in common.''

The $850 paid for the Bass property came from the income from the Bridge Auto Court, and the $4,000 paid for the Harmon property from these sources: $2,000 from the proceeds of a mortgage for $5,000, executed by defendant on the Bridge Auto Court, in favor of a Prescott bank, and the other $2,000 by the execution by defendant and plaintiff of a mortgage in favor of C. E. Addams, in that sum, on the Aztec Motor Inn and Trailer Court itself. Nothing had been paid on either of these obligations at the time of the trial. It appears further that in addition to these two mortgages totaling $7,000, labor bills and federal housing administration loans, to the extent of $4,500 were placed on these two auto courts, but the record does not disclose whether all this sum was se-

cured by both auto courts, or whether a portion of it was secured by only one of them.

The record discloses that plaintiff had about $1,300 cash when married and that it was a part of $3,000 received by him in settlement of injuries suffered in an automobile accident. The court found, however, that none of this $1,300 went into the purchase of the Aztec Motor Inn and Trailer Court, or the improvement of it or the Bridge Auto Court, but that it was used by the plaintff within four months after marriage in paying debts contracted by him before marriage and for the personal benefit of himself and children.

It appears also from the findings of the trial court that the plaintiff continuously, from the time of marriage until the day of separation, collected large sums of money from each of the two properties, the Bridge Auto Court and the Aztec Motor Inn and Trailer Court, without accounting for the same, and used it for his own personal use and that of his family, consisting of a son and daughter; that upon filing this suit he drew from the bank account of plaintiff and defendant $360, leaving about $4 therein; that he took possession of the Aztec Motor Inn and Trailer Court, and has held it since, collecting all the income therefrom and failing to account either for the $360 or the income from this court.

■ At the trial the plaintiff was asked by his counsel whether at the time of marriage he and Mrs. Henderson had an agreement (admittedly oral) regarding the disposition of the income to be derived from the Bridge Auto Court after marriage and the defendant objected to the question upon two grounds: First, it was a prenuptial agreement, and under section 63–201, Arizona Code 1939, was required to be in writing, and, second, it was an agreement affecting

real estate, and under section 58–101, subdivision 6, was inadmissible unless in writing. The court did not sustain either of these objections, but stated: "From another standpoint, it seems to me the element of time, if the contract is not to be performed within one year, it must be in writing too," and thereupon sustained the objection, though it permitted the question to be answered when renewed a little later upon the ground that "it may throw some light on what was done." Whereupon the witness answered:

"When I went up there after I was married, we had this agreement before, and we were to improve the property and pay all the expenses out of it and if there was anything left it was to be shared fifty-fifty. We were to improve the property and put it up to a standard, which it wasn't, it was run down very bad."

Several of plaintiff's assignments are based on the court's action relative to the proof and effect of this prenuptial agreement, but since evidence of it was finally admitted upon the ground that it might throw some light on what was done, there would seem to be no basis for complaint. Whether the court was, or was not, right in its view that the agreement was not to be performed within a year, is not material since evidence of it was finally admitted generally, without limitation as to purpose. In addition the defendant denied the agreement and it is quite probable that the court accepted her version of the proposition and rendered its decree upon that basis.

Notwithstanding the deeds conveyed the Bass and Harmon properties, which, with the cabins on it, constituted the Aztec Motor Inn and Trailer Court, to the defendant and plaintiff as joint tenants, with the right of survivorship, and the grantees signed a statement in them saying that it was their purpose to acquire the property in this way, the court held that the Aztec Motor Inn and Trailer Court was the sep-

arate property of the defendant, and this action of the court is one of the principal errors assigned. There can be no question but that this property though purchased with the funds of the defendant, was conveyed to her and the plaintiff, not as a part of their community estate or as her separate property, but as joint tenants with the right of survivorship, pursuant to the provisions of section 71–122, Arizona Code 1939 (section 2777, Arizona Code 1928), and the construction placed thereon by this court in *Baldwin's Estate,* 50 Ariz. 265, 71 Pac. (2d) 791 and *Blackman* v. *Blackman,* 45 Ariz. 374, 43 Pac. (2d) 1011.

In the case of Baldwin's Estate, it was definitely stated that, notwithstanding the community property law, a husband and wife could, under section 2777, Revised Code 1928 (section 71–122, Arizona Code Annotated 1939), take property and hold it as joint tenants with the right of survivorship, the same as any other two persons could, provided it was clear from the deed conveying to them that they took it in this way and both parties understood they were doing so. And in view of the statement in the deed to the plaintiff and defendant, it is difficult to see how an intention to take as joint tenants could have been more clearly expressed or how either party could have failed to realize they were acquiring the property as joint tenants and not as community property. In fact the specific statement that the property was not conveyed to them as community property appears twice in the deed, one of these being signed by both grantees, and this being true, it follows that under the case of Baldwin's Estate the holding of the court that the Aztec Motor Inn and Trailer Court is the separate property of the defendant is not supported by the facts.

Whether the holding in that case was correct is, the court now feels, rather doubtful. However,

even though convinced that to hold a husband and wife may take property in Arizona as joint tenants with the right of survivorship is wrong, the question is nevertheless *stare decisis* in this jurisdiction and in view of the fact that titles have been acquired relying upon the construction of the statute in the Baldwin case, it would undoubtedly work an injustice upon some persons to hold now that that case was wrong. It is true that we do not know to what extent people have acquired property relying upon it, but the fact that within the last six or seven years three cases have come to this court involving this question justifies the conclusion that it is very probable that many others have relied upon it in taking title, and for this court to say now that the interpretation placed upon the statute was not correct would mean that all such titles could be set aside, and this should not be done unless the facts furnish the court no other alternative. The only way the effect of the Baldwin decision, if wrong, may now be overcome without doing an injustice to innocent persons, is by legislative act, because that body could, and if it concluded that it was never intended or is unwise to permit a husband and wife to take property and hold it as joint tenants with the right of survivorship, undoubtedly would change the law for the future and by so doing would avoid disturbing the title of any who may have purchased property relying on the construction of the statute in the Baldwin case. Hence, the courts cannot do otherwise than uphold conveyances to husband and wife as joint tenants with the right of survivorship until the law permitting such transfers is modified by the legislature in such a way as to prevent it.

There are several other assignments, but in view of what is said above a discussion of them is unnecessary.

The decree, in so far as it grants defendant a divorce and, with one exception, disposes of the property is affirmed. The exception is the holding that the Aztec Motor Inn and Trailer Court, which is held in joint tenancy, is the separate property of defendant. The court should take such action regarding it as will enable the plaintiff and defendant to realize their respective interests in it when the obligations against it are satisfied.

The decree as to it, is reversed and the case remanded with direction to take such action as will be necessary to carry out the views herein expressed.

LOCKWOOD, C. J., and ROSS, J., concur.