253 P.2d 805

In re TRIMBLE'S ESTATE.

TRIMBLE v. ST. JOSEPH'S HOSPI-
TAL et al.

No. 5522.

Supreme Court of New Mexico.
Feb. 19, 1953.

G. W. R. Hoy, Farmington, for appellant.

Keleher & McLeod and J. C. Ryan, Albuquerque, for appellee St. Joseph's Hospital.

Charles M. Tansey, Jr., Farmington, for appellee Farmington Gen. Hospital and Dr. Eugene N. Davis.

COORS, Justice.

This is an appeal from an order of the District Court of San Juan County sitting in probate in the estate of Walter Lowell Trimble, intestate.

Certain creditors' claims were filed against the estate, all of which were approved by the administratrix (the widow of decedent) and which amounted to approximately $1,700 for hospital charges, medical service and burial expense and another $500 for personal notes of the decedent outstanding at his death.

After said claims were filed and approved, the administratrix called for a determination by the court of the question whether the real estate involved in this appeal was subject to their payment. From a ruling the property was community property of the decedent and his widow, and therefore subject to payment of claims against the estate, she appeals.

The background of the controversy is, briefly, as follows: In her original petition for probate of the estate, the administratrix stated:

"5. That the deceased and petitioner herein, wife of the deceased, owned real property situated in the town of Farmington, New Mexico, of the approximate value of $12,500, subject to incumbrances. * * *"

Subsequent to the filing of this petition, the administratrix learned the property in question had in fact been deeded to the decedent and herself in joint tenancy. When the inventory of the estate was filed the administratrix and widow made the following statement:

"That the abstract to said property had been deposited with the Equitable Life Insurance Company in connection with a loan on said real property: that the said administratrix was not aware that said property was held in joint tenancy until the said abstract was obtained from said insurance company

together with a deed to said property, for which reason your petitioner herein was of the impression that said property belonged entirely to the estate of the said deceased as community property of the said Walter Lowell Trimble and your undersigned petitioner as administratrix."

Title to the property had been conveyed by two deeds which described the grantees as husband and wife and were in the form of joint tenancy deeds. Their granting clauses were identical, and provided:

"Not as tenants in common, but in joint tenancy, the survivor of them, their assigns, and the heirs and assigns of such survivor."

It was stipulated that the properties were purchased with community funds. There is no suggestion the deeds were made in an attempt to defeat the rights of creditors.

The four assignments of error argued and presented in appellant's brief-in-chief are inter-dependent and raise the question whether it was error for the trial court to find the property in question was community property.

The pivotal question under these facts is whether transmutation of community property (i. e., purchase funds) into the common law estate of joint tenancy has been effected.

Although it is unnecessary to re-examine at length the historical background of our community property system, it is important to keep in mind certain dominant principles of that system.

■ In New Mexico, property which is owned by either spouse before marriage, or acquired thereafter by gift, bequest, descent or devise, and the rents, issue and profits thereof, is his or her separate property. Secs. 65–304, 65–305, N.M.S.A.1941 Comp. "All other property acquired after marriage by either husband or wife, or both, is community property * * *." Sec. 65–401, N.M.S.A.1941 Comp., as amended, Laws 1947, ch. 191, sec. 1. This last named section establishes certain presumptions where the conveyance is to the wife alone, or to her and her husband, to which reference will be made hereafter, but, the mainstay of our community property system is contained in the first sentence of Sec. 65–401 quoted just above.

Another basic principle of community property as stated in de Funiak, Principles of Community Property, Sec. 77, p. 203, is as follows:

"There was no question in the Spanish law, of course, that upon the acquisition or purchase of other property through the use of community property, the property so acquired or purchased was also community property; the same was true of property acquired or pur-

chased by a husband or wife through the use of money of the husband or wife, where such money was earned or gained during the marriage since it constituted community property."

The same section at a later point, p. 205, continues:

"The rule is also usually correctly followed by the courts of our community property states that property acquired during marriage through the use of community property also is community property."

Superimposed upon these doctrines is the declaration of Sec. 65–206, N.M.S.A.1941 Comp., that "Either husband or wife may enter into any engagement or transaction with the other, or with any other person respecting property, which either might, if unmarried; subject, in transactions between themselves, to the general rules of common law which control the actions of persons occupying confidential relations with each other."

Growing side by side, and in many instances directly infused in our community property system are certain estates of ownership developed by the common law. N.M. S.A.1941 Comp. Sec. 65–302 provides:

"Methods for holding property.— Husband and wife may hold property as joint tenants, tenants in common, or as community property."

The Circuit Court of Appeals in Hernandez v. Becker, 10 Cir., 1931, 54 F.2d 542, 547, a case involving the property laws of New Mexico and the Federal Estate Tax, declared with regard to joint tenancies:

"A joint tenancy arises where two or more persons have any subject of property jointly in which there is a unity of interest, unity of title, unity of time, and unity of possession. 2 Bl. Com. 180. * * *

"The chief incident of such an estate is the right of survivorship by virtue of which, upon the death of one joint tenant, his interest does not pass to his heirs or representatives, but the entire tenancy remains to the surviving cotenants, and the last surviving tenant takes the whole. 2 Bl.Com. 183, 184; * * *. The survivor does not take the moiety of the other tenant from him or as his successor, but takes it under and by virtue of the conveyance or instrument by which the joint tenancy was created. * * *"

There remains only one other legislative pronouncement to guide us in determining the present issue, Sec. 65–401, N.M.S.A. 1941 Comp., so far as pertinent, which provided, before amendment, as follows:

"All other property acquired after marriage by either husband or wife, or both, is community property; but whenever any property is conveyed to a

married woman by an instrument in writing the presumption is that title is thereby vested in her as her separate property. And if the conveyance be to such married woman and to her husband, or to her and any other person, the presumption is that the married woman takes the part conveyed to her, as tenant in common unless a different intention is expressed in the instrument, and the presumption in this section mentioned, is conclusive in favor of a purchaser or encumbrancer in good faith and for valuable consideration. * * *"

Although this section was amended by Laws 1947, ch. 191, sec. 1, reference is made to the earlier statute because the property in question in this case was acquired before the 1947 amendment.

While the question of presumptions is not raised specifically by the appellant, we believe consideration of this problem is implicit in the issue presented. California has a statute, Sec. 164, Cal.Civil Code 1941, which for present purposes is substantially identical with our Sec. 65–401, supra. In the case of Siberell v. Siberell, 1932, 214 Cal. 767, 7 P.2d 1003, 1005, the facts raised the question of whether the presumption of a gift to the wife when property was conveyed to her and her husband as tenants in common was paralleled by a similar presumption where the husband and wife took title to the property as joint tenants. In

this divorce action the wife claimed to own half of certain property as a joint tenant, and an additional half interest in the remaining half of the property by virtue of her membership in the community. The court ruled there was no presumption of gift in the latter instance. The rationale of this decision is that the estates of joint tenancy and community ownership are incompatible by their very nature, and, further, that the statute on its face excludes any idea of a presumption of gift attaching to a deed in joint tenancy by the phrase " 'unless a different intention is expressed in the instrument.' "

In August v. Tillian, 1947, 51 N.M. 74, 178 P.2d 590, in construing said sec. 65–401 prior to its amendment, we recognized that a presumption of gift to the wife did exist where property was conveyed to husband and wife as tenants in common, with the result the wife owned one-half as her separate property, and owned an additional quarter interest in the property by virtue of the fact the husband's interest was community property. However, we are in agreement with the California court in the Siberell case that no similar presumption exists under sec. 65–401 prior to amendment where a deed is executed to husband and wife during marriage as joint tenants.

It is the contention of the appellant that although she was at all times during the life of her husband, and, indeed, even until after the commencement of probate pro-

ceedings of his estate, ignorant that the deeds to the property in question were deeds in joint tenancy, but was under the impression the property was held by herself and the decedent as community property, that, nevertheless the expression of intention in the deed is alone sufficient to create an estate in joint tenancy. She further contends that upon the death of her husband the entire property became hers by the classic incident of survivorship and that such property is, therefore, not subject to payment of claims against the estate of her husband.

It is necessary, then, to re-examine the mode and manner of transmutation between husband and wife, wherever permissible, of community property into other forms of ownership.

Until recently, it was the view of this court that husband and wife could not transmute community property into separate property, or vice versa, either by oral or written agreement. Newton v. Wilson, 1949, 53 N.M. 480, 211 P.2d 776; McDonald v. Lambert, 1938, 43 N.M. 27, 85 P.2d 78, 120 A.L.R. 250. However, in the recent case of Chavez v. Chavez, 1952, 56 N.M. 393, 244 P.2d 781, 782, we declared:

"Our approval of the transmutation of community funds into property held in joint tenancy by husband and wife is directly contrary to our decisions in McDonald v. Lambert, 43 N.M. 27, 85

P.2d 78, 120 A.L.R. 250, and Newton v. Wilson, 53 N.M. 480, 211 P.2d 776, which cases we now expressly overrule. We adopt the dissenting opinions of Mr. Justice Sadler in each case so far as they state his construction of the statute, Sec. 65–206, N.M.S.A. 1941 Comp., declaring either husband or wife may enter into any engagement or transaction with the other, or with any other person respecting property, which either might, if unmarried; subject, in transactions between themselves, to the general rules of common law which control the actions of persons occupying confidential relations with each other. See Clark, Transmutations In New Mexico Community Property Law, 24 Rocky Mt. L.Rev. 273.

"Proof to support such transmutation must be clear, strong and convincing; a mere preponderance of the evidence will not suffice to effect it.

Thus, it is now expressly recognized that, within certain limitations, transmutation of community property between husband and wife is approved. The limitation imposed by the court is contained in the last sentence of the quotation from the Chavez case. To re-phrase the limitation: In New Mexico property acquired by husband and wife during marriage except by gift, devise or descent is deemed to be community prop-

erty and any other form of ownership through transmutation must be established by clear, strong and convincing proof— more than a mere preponderance of evidence.

In the Chavez case neither spouse was ignorant of the fact the deed was one in joint tenancy, nor were the creditors there involved opposed to the conversion in manner of ownership. We are then asked to extend the ruling in the Chavez case to cover the present situation where the record is absolutely silent as to the intention of the husband, the manager of the community estate, and where the wife by her own sworn statement declares she thought the property was held as community property.

It is well to examine the pronouncements of other states having community property systems on the present question. We have already referred to the California case of Siberell v. Siberell, supra. Headnote No. 9 of that decision reads as follows:

"Where property was deeded to husband and wife as joint tenants, presumption that wife took half interest in property as separate estate and husband took other half as community property *held* not to exist.

"Presumption did not obtain since use of community funds to purchase property and taking of title thereto in name of spouses as joint tenants was tantamount to binding agreement between them that same shall not thereafter he held as community property, but instead as joint tenancy and a joint tenancy, evidence of which law requires to be on face of conveyance creating it, is of necessity an expression of intention to hold property otherwise than as community property, and equal interest of spouses must therefore be classed as their separate but joint estate in property."

This headnote is somewhat misleading, however, for the facts of the case disclosed the husband and wife took title to certain lands as joint tenants, the purchase being made with community funds. Then, some years later the husband, in an effort to prevent creditors asserting rights in his property, attempted by deed to convey the entire estate to his wife. Subsequently, in a divorce action, the wife claimed, alternately, either the whole tract, or ownership of one half of it as joint tenant and ownership of another quarter interest in it by virtue of her contention the husband retained half of the property as community property. The court negatived each contention, and upheld the trial court which had ruled the entire property was community property. The court said the second deed, the one attempting to convey the whole property to the wife, was not made with the purpose or intent to alter the community character of the property, and further said:

"It is not disputed that the property was acquired with community funds, and the testimony of the defendant (husband) with reference to the circumstances under which the deed of 1918 (the second deed) was executed is sufficient evidence to support the finding that the property was community property. This is an additional reason why the division ordered by the trial court may not be disturbed. In any state of the case the court had the power to divide the property equally."

We therefore feel that at the most the case only stands for the proposition that it is proper to show by extrinsic evidence that a deed in joint tenancy was actually not intended to convert community property into another form of ownership. The case has been generally cited, however, for the proposition that the presumption of community property is destroyed when it is shown the property was acquired by the spouses under a deed in joint tenancy.

In Tomaier v. Tomaier, 1944, 23 Cal.2d 754, 146 P.2d 905, 907, the court was confronted with a dispute over property in a divorce action. It declared the general rule to be that evidence could be admitted to show that property was community property although title was acquired under a deed which would ordinarily create a common law estate. On the question of joint tenancy as opposed to community property, the court said:

"It has in fact been held unequivocally that evidence is admissible to show that husband and wife who took property as joint tenants actually intended it to be community property. (Citing cases.) Such rulings are designed to prevent the use of common law forms of conveyance to alter the community character of real property contrary to the intention of the parties.

" * * * If the evidence establishes that the property is held as community property, however, it cannot also be held in joint tenancy, for certain incidents of the latter would be inconsistent with incidents of community property."

A recent California Court of Appeals decision, King v. King, 1951, 107 Cal.App. 2d 257, 236 P.2d 912, declares the rule that where a deed is presented in joint tenancy the form of the conveyance is such as to destroy the statutory presumption that the property is community and that such deed creates a joint tenancy in which the interests of husband and wife are separate property. The decision bases its holding on the Siberell case and Tomaier v. Tomaier, supra, and several Court of Appeals decisions in California. Certainly the decision in this case carries what was said in the two earlier Supreme Court of California opinions somewhat further. The facts of the King case were the husband and wife purchased a home at a price of $27,000;

$21,000 was paid in cash from a joint safe deposit box. This was money earned by the husband. The $6,000 balance was borrowed from a bank and secured by deed of trust. A few months later the husband borrowed $5,000 from his sister, giving her his personal note for that amount, with which money he extinguished the lien of the bank on the house. He died and his sister brought action on the personal note for $5,000 against the estate, and the trial court ruled the home was the separate property of the wife and not subject to the claim of the sister for the $5,000. On appeal the holding was affirmed. It is well to note the court made mention of the fact the deed to the property in joint tenancy had already been executed when the husband borrowed the money from the sister.

An examination of the cases relied on in the King case, other decisions from the California Courts of Appeal, discloses the further entrenchment of the rule that the production of a deed to husband and wife in joint tenancy destroys a presumption the property is taken as community property, and, standing alone, such a deed establishes a prima facie case the property was intended to be held in joint tenancy. Significantly, all of the cases from the California Courts of Appeal cited in the King case in turn cite and rely upon the Siberell case. While we do not deem it necessary to detail here the holdings of each of these cases, it is well to note two of them.

In Cummins v. Cummins, 1935, 7 Cal. App.2d 294, 46 P.2d 284, 289, it was held a conveyance to husband and wife as joint tenants does not necessarily preclude their holding the estate so conveyed as community property. The parties owned two houses and lots in Hollywood, California, and $8,000 in a bank account in the husband's name. The property was acquired after marriage and the Hollywood property was taken by joint tenancy deed. To the contention of the husband that one-half of the property was his separate estate, the court said:

"Moreover, a conveyance of property to a husband and wife as joint tenants does not necessarily, and under all circumstances, preclude the idea of their holding the same as community property. The case of Siberell v. Siberell, supra, relied upon by appellant, was decided solely upon evidence that the property had been purchased with community funds and was deeded to the parties as joint tenants. There was no evidence other than this, to indicate the intention of the grantees. In Delanoy v. Delanoy, 216 Cal. 23, 13 P.2d 513, 514, the court, referring to the Siberell Case, said: 'This court has recently determined that, *in the absence of any evidence of an intent to the contrary,* when property is purchased with community funds and the title is taken in the name of the hus-

band and wife as joint tenants, the community interest must be deemed severed by consent, and the interest of each spouse therein is separate property.' (Italics ours.) In both the Siberell and Delanoy Cases the contest was between one spouse and a third party. Aside from the joint tenancy deed and the evidence of purchase from community funds, there was no evidence in those cases to show intention of the parties as to the status of the property. Here we have the testimony of both the husband and wife. The wife testified that it was community property * * *. Appellant testified that it was community property * *. In the presence of such undisputed evidence of both owners, there can be no question of their intention to hold the property as community property regardless of the terms of the joint tenancy deed."

For similar holding see Rogers v. Rogers, 1948, 86 Cal.App.2d 817, 861, 195 P.2d 890, and for other cases recognizing the rule that a deed in joint tenancy destroys the presumption it is held as community property, see Application of Rauer's Collection Co., 1948, 87 Cal.App.2d 248, 196 P.2d 803, and Cox v. Cox, 1947, 82 Cal.App.2d 867, 187 P.2d 23, 25. In the last of these cases, an estate in joint tenancy as opposed to the husband's contention it was separate property was recognized, and we quote from the opinion the following sentence:

" * * * It is undoubtedly the law that, regardless of the character of the deed taken by either or both spouses to property, that is, regardless of whether the deed shows it to be separate, community, tenancy in common or joint tenancy, the true intention of the parties may be shown by parol, and such evidence may controvert the apparent effect of the character of ownership provided for in the instrument of transfer."

Before concluding our discussion of the California rule, we must pay note to another line of cases exemplified by Hulse v. Lawson, 1931, 212 Cal. 614, 299 P. 525, and Nichols v. Mitchell, 1938, 32 Cal.2d 598, 197 P.2d 550, where determinations of the trial courts were affirmed, holding in the Hulse case that an estate in community property existed although the deed was one in joint tenancy; the holding being based primarily, it seems, on the fact the consideration for the deed was community property. In the Nichols case, the Court recognized property as community property although it was deeded to the wife alone and again, the proof was that community funds were used for the purchase of the property. Significantly, in both of these cases attempts were made to defeat the rights of creditors.

Turning next to the expressions of the court of Arizona, the following language from Baldwin v. Baldwin, 1937, 50 Ariz. 265, 71 P.2d 791, 795, is most pertinent:

"* * * As between husband and wife a joint tenancy is an exception to the community property rule of this state and in derogation of the general policy of that system of holding property, and this being true a clause in a deed creating a joint tenancy between them should be effective only where it clearly appears that both spouses have agreed that the property should be taken in that way. A deed is generally signed by the grantor only, hence, before a joint tenancy clause may be held binding on the grantees and the community property law thereby defeated, we think it necessary not merely that the deed, contain language creating such an estate but that it further appear that the deed was accepted by the spouse whose property it is sought to bring within its terms, knowing that it contained that provision. If the deed itself contains nothing showing this fact, such, for instance, as an acceptance, of the terms thereof in the handwriting of the grantees, or an endorsement by the recorder that it was placed of record at the request of the deceased spouse, it might be established by any proper extrinsic evidence.

"It must be kept in mind in this connection that community property is frequently managed by one of the spouses and that it may easily happen that property is purchased by that spouse with community funds and a deed thereto containing language creating an estate in joint tenancy delivered to and accepted by him or her without any knowledge of such provision on the part of the other spouse. To hold, under these circumstances, that the mere insertion in the deed of such language would be binding on that spouse and deprive him or her or their heirs of his or her interest in the property would not only defeat the community property law in that instance but result in an absoulte injustice to an innocent party. Therefore, in view of the possibility of such a result, we think that the party who relies on a joint tenancy clause in a deed should bear the burden of showing that the spouse whose property he claims is governed thereby knew that the deed so provided."

Subsequent to the Baldwin case, the Arizona court has had two instances before it which were governed by the rule stated above. In Henderson v. Henderson, 1942, 58 Ariz. 514, 121 P.2d 437, 438, the parties, husband and wife in a divorce action, had acquired realty which was conveyed to them as follows: "not as tenants in common and

not as a community property estate but as joint tenants with right of survivorship". The deed also contained the following statement, signed by both grantees: "The above deed is accepted and approved by the Grantees; it being the intention of the Grantees to acquire these premises as joint tenants with right of survivorship, and not as community property or as tenants in common." In commenting on these statements the court said:

"* * * And in view of the statement in the deed to the plaintiff and defendant, it is difficult to see how an intention to take as joint tenants, could have been more clearly expressed or how either party could have failed to realize they were acquiring the property as joint tenants and not as community property. In fact the specific statement that the property was not conveyed to them as community property appears twice in the deed, one of these being signed by both grantees, * * *."

Again, in Collier v. Collier, 1952, 73 Ariz. 405, 242 P.2d 537, 540, the court approved a conveyance where property was deeded to both parties in joint tenancy by an instrument reciting the conveyance was to: "C. W. Collier and Zelpha Banta Collier, his wife as joint tenants Grantees, not as tenants in common and not as a community property estate, but as joint tenants with right of survivorship." The deed, in addition to being signed by the grantor, was endorsed as follows by the grantees: "The above deed is accepted and approved by the Grantees; it being their intention to acquire said premises as joint tenants with the right of survivorship, and not as community property or as tenants in common." In passing on this conveyance, the court said:

"In the instant case, the deed created an estate in joint tenancy and was knowingly and intentionally accepted as such by the grantees. This set of facts was conclusive upon the trial court and justified the finding that the real estate was held in joint tenancy. * * *"

In Nevada no cases have been found where the husband and wife took title to property as joint tenants; however, Nevada has statutes which parallel our statutes, Secs. 65-206, 65-302 and the first sentence of Sec. 65-401, N.M.S.A.1941 Comp. There is in Nevada no statutory presumption where title is taken in the wife's name, or in the name of the husband and wife as tenants in common. Nevada has held repeatedly that to support transmutation of community property into separate property the burden of proving the transmutation is upon the party asserting it is separate property, and the proof of such transmutation must be clear, certain and convincing. See Petition of Fuller, 1945, 63 Nev. 26, 159

P.2d 579; In re Wilson's Estate, 1936, 56 Nev. 353, 53 P.2d 339; Stockgrowers & Rancher's Bank of Reno v. Milisich, 1930, 52 Nev. 178, 283 P. 913; Milisich v. Hillhouse, 1924, 48 Nev. 166, 228 P. 307; Laws v. Ross, 1921, 44 Nev. 405, 194 P. 465, 467. In the last cited case the court said:

" * * * We believe that no other safe rule can be laid down than that property or money once a part of the community will be presumed to remain such until shown by clear, certain, and convincing proof, to have been transmuted into separate property as against creditors. * * *"

We have not attempted to discover every case touching upon the problem presented here, nor have we tried to reconcile those studied. Yet, we believe enough decisions have been digested to warrant the drawing of certain conclusions.

In California, the courts have repeatedly declared that the presumption of community property ownership is destroyed by the production of a deed in joint tenancy, and that such a deed, of itself, constitutes a prima facie case that the intent of the parties was to take as joint tenants—at least, this is the rule in the absence of any evidence of an intent to the contrary, and where no attempt has been made to defeat the interests and claims of creditors by such a conveyance.

The Arizona Court does not go so far as to say a prima facie case is made out of intent to take as joint tenants by the deed alone, nor is the presumption of community property destroyed in the face of such a deed. In that state the intent of the parties must be made clearly to appear before the community nature of the ownership may be defeated.

Nevada requires clear, certain and convincing proof to rebut the presumption property acquired after marriage is community property.

Stripping aside the technicalities of evidentiary force, the root spirit of all of these decisions is *intent,* and rightly so. Ultimately, if the dual estates of the common and the civil law can exist together compatibly, the amalgam must be the true intention of the parties. To preserve the virility of our indigenous form of marital ownership we have declared in the Chavez case that proof to support such transmutation must be [56 N.M. 393, 244 P.2d 783] "clear, strong and convincing", and more than a "mere preponderance of the evidence". We have no desire to retreat from this declaration.

To uphold the appellant in her contention we would have to rule that the deed, made out on a form for joint tenancy was alone such "clear, strong and convincing" proof, and further say that even where one spouse was totally ignorant of the fact the

deed was in such form, but believed the property was held as community property, that, nevertheless, the proof of the intention of husband and wife to so convert the community property into an estate in joint tenancy had been established by more than a "mere preponderance of the evidence". This we cannot do.

The above was written before receiving Chief Justice Sadler's dissenting opinion and the following is added to our opinion to clear up some statements and conclusions found in such dissent which we believe are confusing and erroneous.

The dissent seems to overlook the all important factor in transmutation of property by married persons which is that there must be an intention of the persons to make the transmutation and that such intention must be proved by evidence, or supported by a presumption which is not overcome by evidence to the contrary. We hold the evidence to prove the intention must be clear, strong and convincing as do the Supreme Courts of Arizona and Nevada. The dissent claims to have discovered some statutory presumption in favor of the wife where property is conveyed to husband and wife as joint tenants with right of survivorship and that such presumption may be found in Sec. 65–401 or Sec. 65–302, New Mexico Statutes 1941 Annotated.

After careful study of these two statutes we are unable to find any presumption whatever in favor of the wife where property is conveyed to husband and wife as joint tenants. Sec. 65–401 provides that when a written instrument conveys property to a married woman she takes title as her separate property and when property is conveyed to her and her husband or to her and another person she takes as a tenant in common unless a different intention is expressed in the instrument. There are no other presumptions in this statute except those with reference to purchasers in good faith for valuable consideration, and no such purchaser is involved in this case. How the author of the dissenting opinion can find any presumption in this section, relating to conveyances in joint tenancy to husband and wife is beyond our comprehension.

The California statute Sec. 164 of the Civil Code is identical with our statute Sec. 65–401. We cited the California case of Siberell v. Siberell, supra, to show that even in California, where the courts have gone beyond the courts of all other community property states in allowing transmutation of property, it denied in a divorce case filed by the wife that there were any statutory presumptions in her favor because all property acquired during marriage had been conveyed to her and her husband by deeds in joint tenancy, and denied that any presumptions found in Sec. 164 of the California Civil Code, same as our 65–401, applied where deeds purported to create joint tenancy. The Supreme Court upheld

lower court's decision that under evidence even though deeds conveyed to them as joint tenants, they nevertheless held as a community.

We have cited and discussed many California cases, not because we approve of all such opinions, but to show the confusion brought about by their extremely liberal course in allowing and recognizing transmutation on any evidence that might be called substantial, that is a mere preponderance. Texas, on the other extreme allows no transmutation, which course we followed until nine months ago when, by a unanimous opinion in Chavez v. Chavez, we overruled our former decisions on the subject. This decision, as well as that in Chavez v. Chavez, supra, goes neither to the extreme of Texas nor California but, we believe, follows a reasonable middle course as our own law provides and which will avoid endless confusion as to the status and title of property of married persons.

The dissent quotes from the opinion in Stafford v. Martioni, 192 Cal. 724, 221 P. 919. No conveyance in joint tenancy to husband and wife was there involved. The conveyance there was to the wife alone in her own name and the court was discussing merely whether or not under such a deed the presumption in favor of the wife found in Sec. 164 of the Cal. Civil Code, the same as 65–401, N.M.S.A.1941, was overcome by the evidence. That decision in no way discusses or passes upon the question of transmutation of property from community to joint tenancy as is involved in our case.

It is difficult to see the reason for the dissenting opinion to quote three paragraphs from the opinion of the Supreme Court of California in Siberell v. Siberell, supra, when that decision is absolutely contrary to the conclusions and statements found in the dissenting opinion. The first paragraph quoted by the dissent cites California cases relied upon by the losing party, the wife in that case. Such cited cases, however, involve deeds made to husband and wife which, under the statutory presumption in Sec. 164 of California Civil Code, created the presumption that husband and wife took as tenants in common where not otherwise expressed in the conveyance but the Siberell case involved a deed to husband and wife as joint tenants and the court therefore said: "But we can see no reason whatsoever to indulge this presumption here." [214 Cal. 767, 7 P.2d 1005]

Perhaps the clearest way to dispel the confusion found in the dissent relating to two statutes of Arizona dealing with the right of survivorship and joint tenancy is to quote such statutes in full. The first such statute passed is Sec. 39–110 of 1939 Arizona Annotated Code, and reads as follows:

"Where two (2) or more persons hold property jointly and one (1) joint

owner dies before severance, and the grant or devise does not expressly vest the estate in the survivor, the interest in the estate of the owner dying shall not survive to the remaining joint owners but shall descend to the heirs of the deceased joint owner as though his interest had been severed and ascertained."

A few years later the second statute in Arizona was enacted. It is Sec. 71–122, 1939 Arizona Code, and provides as follows:

"All grants and devises of real property made to two (2) or more persons create estates in common and not in joint tenancy, except grants or devises in trust or to executors or to husband and wife. A grant or devise to two (2) or more persons may, however, by express words, vest the estate in the survivor upon the death of a grantee or devisee."

Any clear, understandable reading of these statutes fails to reveal that as between husband and wife they prohibit, curtail or set up a presumption against taking and holding property in joint tenancy with right of survivorship. These statutes were both in effect when the decisions of the Supreme Court of Arizona hereinabove cited were rendered and such decisions all recognize the right of the husband and wife to take and hold property as joint tenants but also

hold that the party claiming a transmutation from community property to joint tenancy must clearly prove the intent of the members of the community to make such transmutation.

Likewise does the Nevada Statute Sec. 3362, Nevada Comp.Laws 1929, authorize husband and wife to hold as joint tenants; also does the statute of California from which our Sec. 65–401 was copied.

The citation of August v. Tillian, 51 N.M. 74, 178 P.2d 590, in the dissent gives it no support. Our decision in that case was founded upon the presumption created in Sec. 65–401 with reference to husband and wife holding as tenants in common and it followed the rule announced in several California cases involving the same statute and tenancy in common. Even the California courts have refused to follow any such rule where a joint tenancy was involved.

We recognize fully the statutory presumptions in favor of a wife found in Sec. 65–401, N.M.S.A.1941, and that such presumptions control until overcome by competent evidence but we refuse to create and insert in such Section other presumptions which we fail to find in the law as passed by the Legislature, or which we fail to find in existence anywhere except in the minority opinion.

It is apparent that the dissent attempts to totally ignore and eliminate the first

phrase of said Sec. 65–401, which is the very foundation of our community property system and is taken from the civil law of Spain and Mexico. After statutory definitions of what constitutes the separate property of the husband and the separate property of the wife said Sec. 65–401 provides: "All other property acquired after marriage by either husband or wife, or both, is community property;" This general rule of law declared by the Legislature cannot be ignored in passing upon questions involving the status of property held by married persons.

We deny any responsibility for the failure of the author of the dissenting opinion to distinguish between "proof beyond a reasonable doubt" which is required in criminal cases, and "proof that is clear, strong and convincing" which is required in several types of civil cases.

We have followed the decisions of Arizona and Nevada but not even the Courts of California have gone to the extreme advocated in the dissenting opinion.

A careful study of the minority opinion will disclose that not one authority is cited to support the conclusion reached therein.

Accordingly, the judgment of the lower court is affirmed.

It is so ordered.

McGHEE, COMPTON and LUJAN, JJ., concur.

SADLER, Chief Justice (dissenting).

The prevailing opinion, seizing upon a dictum announced in Chavez v. Chavez, 56 N.M. 393, 244 P.2d 781, seeks to imbed it in our substantive law with all the force of stare decisis in what impresses me as a plain case of judicial legislation. Naturally, the writer was gratified at the court's action in Chavez v. Chavez, supra, in adopting his dissenting opinions in McDonald v. Lambert, 43 N.M. 27, 85 P.2d 78, 120 A.L.R. 250, and Newton v. Wilson, 53 N.M. 480, 211 P.2d 776, as the basis for overruling them in so far as such decisions denied the power of spouses to transmute community property into separate estate and vice versa. But the writer's dissent in neither of those cases, either expressly or by remotest implication, ever germinated the thought resulting in this dictum gratuitously put forward in Chavez v. Chavez, to-wit:

"Proof to support such transmutation must be clear, strong and convincing; a mere preponderance of the evidence will not suffice to effect it." [56 N.M. 393, 244 P.2d 783.]

The prevailing opinion in the present case then follows the quotation of this dictum from the Chavez case with the frank and highly significant admission:

"Thus, it is now expressly recognized that, within certain limitations, transmutation of community property between husband and wife is approved.

*The limitation imposed by the court is contained in the last sentence of the quotation from the Chavez case."* (Emphasis mine.)

It is quite proper and only fair that the majority should make this admission since, obviously, the legislature imposed no such condition to operation of the statutory presumption erected by it in 1941 Comp. § 65–401, when it enacted:

"* * * but whenever any real or personal property, or any interest therein or encumbrance thereon is acquired by a married woman by an instrument in writing *the presumption is that title is thereby vested in her as her separate property."* (Emphasis mine.)

Unquestionably, the legislature intended that this presumption, in and of itself, absent countervailing proof sufficient to overcome it, should suffice to support an adjudication that property conveyed by the husband to the wife by an instrument in writing, though having previous character as community property, or to her by some third person even if paid for with community funds, should become "vested in her as her separate property." August v. Tillian, 51 N.M. 74, 178 P.2d 590, 591. See, also, Laughlin v. Laughlin, 49 N.M. 20, 155 P.2d 1010, and McClendon v. Dean, 45 N. M. 496, 117 P.2d 250. A rebuttable presumption, to be sure, but solid proof, nevertheless, until rebutted.

The legislature said nothing about the presumption arising only where proof of the transmutation suggested by the transfer "is clear, strong and convincing; more than a mere preponderance of the evidence." See Mut. Inv., etc., Co. v. Albuquerque Farm, etc., Co., 34 N.M. 10, 275 P. 92. No, indeed, the injection of such a condition represents this court's excursion into the domain of the legislature—an imposition by the court of what the majority think a proper safeguard from a standpoint of policy. Why is this said? Because the majority frankly admit it. They speak in Chavez v. Chavez of the degree of proof necessary to support transmutation as "The limitation imposed by the court". This sounds more like a legislative declaration than a judicial pronouncement.

In McClendon v. Dean, supra, in an opinion by Chief Justice Brice this court was dealing with the presumption created by 1941 Comp. Sec. 65–401, mentioned as Sec. 68–401, N.M. Sts.1929, and stated what seems to be generally recognized that the statute was adopted from the state of California. We gave it the construction in the McClendon case on the question involved that had been given it in California. We adopted the statute in 1907 as L.1907, c. 37, Sec. 10. The Supreme Court of California holds, contrary to the majority in the case at bar, that the presumption created by this statute as to real estate conveyed to the

wife by an instrument in writing is sufficient in and of itself to support a finding that it is her separate estate. Stafford v. Martinoni, 192 Cal. 724, 221 P. 919. See, also, Goucher v. Goucher, 82 Cal.App. 449, 255 P. 892, and Donze v. Donze, 88 Cal.App. 769, 264 P. 294. The presumption is, of course, rebuttable except that under our statute it becomes conclusive in favor of a good faith purchaser from the wife. Speaking on the subject the Supreme Court of California in Stafford v. Martinoni, said [192 Cal. 724, 221 P. 925]:

"The disputable presumption raised by section 164 of the Civil Code is a form of evidence under the express terms of section 1957 of the Code of Civil Procedure. It may be controverted by other evidence, direct or indirect, but unless so controverted the court or jury is bound to find according to the presumption. Code Civ.Proc. §§ 1961–2061. It is therefore for the court or jury to determine whether or not the evidence against the presumption is sufficient to overthrow it. People v. Milner, 122 Cal. 171–179, 54 P. 833; * * * Hitchcock v. Rooney, 171 Cal. 285–289, 152 P. 913."

When we adopted the California statute we adopted the construction theretofore given it by the highest court of that state. In re Vigil's Estate, 38 N.M. 383, 34 P.2d 667, 93 A.L.R. 1506. It is not my contention that the presumption attending property conveyed to the wife may not be rebutted, save in the single instance where she conveys the property so received to a good faith purchaser. My objection to the majority position is that they maintain, contrary to the holding of the Supreme Court of California in Stafford v. Martinoni, supra, that the statutory presumption does not suffice to support a finding that the property is the wife's separate estate if the conveyance accomplishes a transmutation of community property into separate estate. Such a contention as already noted above is contrary to the California decisions and as well to our own decision in August v. Tillian, supra.

The majority seem to draw some comfort from the case of Siberell v. Siberell, 214 Cal. 767, 7 P.2d 1003, 1005. Just why, I am unable to see, unless it be because of the holding that it was permissible to show by proof that property held under a deed in joint tenancy by husband and wife was actually intended by them to be community property. There is no disposition on my part to challenge this proposition. Certainly, so much of the opinion in the Siberell case now about to be quoted, insofar as it has any bearing on this case can not aid the majority position. The court said:

"It is true that under the recent holding in the case of Dunn v. Mullan, 211 Cal. 583, 296 P. 604 [77 A.L.R. 1015], following Miller v. Brode, 186 Cal. 409, 199 P. 531, and Estate of Regnart, 102

Cal.App. 643, 283 P. 860, it was declared that property deeded to husband and wife without explanation is presumed to vest the wife with a half interest therein as her separate estate and the husband with the remaining half as community property, and because of this holding it is said to be logical to extend this presumption to the situation before us. But we can see no reason whatsoever to indulge this presumption here. This follows for at least two reasons:

"First, from the very nature of the estate, as between husband and wife, a community estate and a joint tenancy cannot exist at the same time in the same property. The use of community funds to purchase the property and the taking of title thereto in the name of the spouses as joint tenants is tantamount to a binding agreement between them that the same shall not thereafter be held as community property, but instead as a joint tenancy with all the characteristics of such an estate. It would be manifestly inequitable and a subversion of the rights of both husband and wife to have them in good faith enter into a valid engagement of this character, and, following the demise of either, to have a contention made that his or her share in the property was held for the community, thus bringing into operation the law of descent, administration, rights of creditors, and other complications which would defeat the right of survivorship, the chief incident of the law of joint tenancy. A joint tenancy is one estate, and in it the rights of the spouses are identical and coextensive.

"Second, on its face section 164 has no application to a case where 'a different intention is expressed in the instrument,' and it seems to us to be clear, as already pointed out above, that a joint tenancy, the evidence of which the law requires to be on the face of the conveyance creating it, is of necessity an expression of the intention to hold the property otherwise than as community property, and that the equal interest of the spouses must therefore be classed as their separate but joint estate in the property."

It may be well at this point to quote the statute in question, so far as material, as it stood prior to the amendment by L. 1947, c. 191. An excerpt therefrom has already been quoted. It is the statute prior to amendment by which the rights of the parties before us are to be determined. It reads:

"All other property acquired after marriage by either husband or wife, or both, is community property; but whenever any property is conveyed to a married woman by an instrument in

writing the presumption is that title is thereby vested in her as her separate property. And if the conveyance be to such married woman and to her husband, or to her and any other person, the presumption is that the married woman takes the part conveyed to her, as tenant in common unless a different intention is expressed in the instrument, and the presumption in this section mentioned, is conclusive in favor of a purchaser or encumbrancer in good faith and for valuable consideration."

It is questionable whether the majority realize that the practical effect of their holding is to strike down and nullify the legislative mandate that the presumption attending a deed to the wife, or to her and another as for that matter, shall be conclusive in favor of a good faith purchaser. If the effect of the deed is to transmute community property into separate estate of the wife, and she conveys the property acquired to a good faith purchaser, the rebuttable presumption that it was her separate estate then becomes conclusive and neither she, her husband, nor community creditors as for that matter, may prove otherwise. So says the statute. Is it not, then, perfectly obvious that to the extent this presumption is weighted down with added conditions and limitations, "imposed by the court", touching the quantum of proof necessary to establish existence of the fact which the statutory presumption assumes

from the mere manner of conveyance, to such extent is the conclusive character given it by the legislature undermined and annulled? How can a presumption which never comes into being for want of the degree of proof essential to its existence, *as declared by this court,* have conclusive character, notwithstanding existence of the fact (conveyance by written instrument to a married woman) which the legislature has said shall create the presumption? Will the majority please answer, if they can?

The majority opinion undertakes a lengthy and extended review of California cases, from a few of which it seems to gain small comfort. However, far the greater number of the California cases cited, such as King v. King, 107 Cal.App.2d 257, 236 P.2d 912; Cummins v. Cummins, 7 Cal.App.2d 294, 46 P.2d 284; Application of Rauer's Collection Co., 87 Cal.App.2d 248, 196 P.2d 803, and Cox v. Cox, 82 Cal. App.2d 867, 187 P.2d 23, and others not here enumerated, not only afford no support whatever to the majority position but on the contrary uphold the opposite view. Indeed, the author of the majority opinion finally summarizes the lengthy review of California cases by actually agreeing that cases from that jurisdiction (and it is from there we get our statute) are against him, and turns to other community property states, seeking the support he failed to find in California.

From Arizona, the cases of Baldwin v. Baldwin, 50 Ariz. 265, 71 P.2d 791; Henderson v. Henderson, 58 Ariz. 514, 121 P.2d 437, and Collier v. Collier, 73 Ariz. 405, 242 P.2d 537, are cited. Nevada cases, such as Petition of Fuller, 63 Nev. 26, 159 P.2d 579; In re Wilson's Estate, 56 Nev. 353, 53 P.2d 339, and others are also cited. It is not claimed that Arizona has a statute such as our 1941 Comp. Sec. 65–401, creating the presumptions so deadly to the majority position. To say the least, none is mentioned and as to the situation in Nevada the prevailing opinion states: "There is in Nevada no statutory presumption where title is taken in the wife's name, or in the name of the husband and wife as tenants in common." Of course, the presence of such a statute as that in California, creating its significant presumptions, and such as ours here in New Mexico, makes all the difference in the world.

Apparently, the estate in joint tenancy is looked upon with little favor in Arizona. Baldwin v. Baldwin, supra. The right of survivorship was abolished in estates held jointly, save where expressly vested by the grant or devise creating it. 1939 Ariz. Ann.Code, § 39–110. Moreover, there is a statutory presumption against the creation of such estates. Ariz.Ann.Code, § 71–122. These statutes perhaps account for the fact that it is there not enough that the grantees receive such a deed and hold under it but some extrinsic proof is necessary [50 Ariz. 265, 71 P.2d 795], "such, for instance, as an acceptance of the terms thereof *in the handwriting of the grantees,* or an endorsement by the recorder that it was placed of record at the request of the deceased spouse," if the property conveyed previously had community character or was purchased with community funds. Baldwin v. Baldwin, supra. (Emphasis mine.) Even conceding that Arizona has a statute authorizing husband and wife to hold real estate in joint tenancy, there are in New Mexico no statutes so affecting the right as that curtailing the incident of survivorship in such estates, Ariz.Ann.Code, § 39–110, and setting up a presumption against the existence of the estate as their § 71–122, supra.

Under our statute, § 65–302, supra, the intention of the spouses in creating such estates in themselves heretofore has been determinable by ordinary standards. If a deed in usual form has employed language appropriate to the creation of the estate and the spouses hold under it, heretofore it has not been necessary that they support what its language plainly imports by some written affirmation of competency or declaration of understanding before giving it effect as representing the true intention of the parties.

There seems to be a growing disposition on the part of some to deplore the progressively increasing tendency of spouses to take title to real property in joint ten-

ancy. The writer has heard it asserted on more than one occasion within the past year or more that there are literally thousands of these deeds in joint tenancy in Bernalillo County alone. So what? Maybe that is the way the grantee spouses have wished it. Such would surely be a fair and natural assumption. If language appropriate to the creation of an estate in joint tenancy is employed in a deed conveying property to husband and wife, what of it? Obviously, it is a matter of no concern to this court, and assuredly one of complete indifference to every member of it, how husbands and wives take title to property acquired by them. The spouses are free agents and may contract with each other as if unmarried, except to alter their legal relations. 1941 Comp. § 65–206.

It becomes all the more important, then, that we do not by self-imposed conditions as to degree of proof essential to validity, applicable not only to deeds in joint tenancy to husbands and wives but as well to other forms of conveyance in which the wife's name appears as a grantee, so magnify the burden resting on the wife as a survivor in joint tenancy as to force a practical abandonment of use by spouses of this form of conveyance in taking title to property. If, indeed, the estates in joint tenancy of husbands and wives are as numerous as suggested in Bernalillo County and throughout the state, as for that matter, then, the law as declared today by the

majority should be a matter of deepest concern to all spouses so holding, lest their intention in the creation of such estates be utterly defeated.

Is it to be necessary hereafter in the creation of estates in joint tenancy in husband and wife, if there be community property, to insure that what they have done in life may be honored after the death of one of them, that independent proof apart from the language of the instrument under which they hold, be furnished? Must the husband and wife, to insure that any such deed will be honored, endorse on its back and both sign this, or this, in substance:

"We are mentally competent and have read and understand this deed. It is exactly what we want and expresses our bona fide wishes."

Or, perchance, must the husband and wife grantees proceed forthwith, following delivery of a joint tenancy deed in their favor, to take the deposition of each other *de bene esse* to preserve the testimony of each, against the contingency of either's death, affirming that what the language of the deed on its face plainly imports, conforms to their wishes and actually represents their true intention?

These are but a few of the pertinent inquiries which arise to plague and perplex husbands and wives holding under deeds in joint tenancy, as an incident of today's decision in this case. But husbands

and wives who are grantees in such deeds are not alone to be concerned. Today's holding is much broader in its sweep. The limitation "imposed by the court" in Chavez v. Chavez, supra, and further emphasized in today's decision, strikes just as deadly a blow at the statutory presumption in the wife's favor attending deeds to her, or to her and her husband, or to her and any other person, if their effect is to accomplish a transmutation of community property into separate estate in the wife. The proof, or evidence, before it can accomplish such transmutation, must be "clear, strong and convincing; a mere preponderance * * will not suffice to effect it." [56 N.M. 393, 244 P.2d 783] As already noted that is what this court, but not the legislature, has said.

Contrary to the mistaken idea entertained by the majority, there is no claim on my part that the presumption of a holding by the wife as separate estate arises from a conveyance to her and her husband in joint tenancy. The decision of the Supreme Court of California in Siberell v. Siberell, supra, points out quite clearly why the presumption does not operate in that event and for two well stated reasons. My objection to the holding of the prevailing opinion is that in the kind and type of deeds where the statutory presumption admittedly arises this court, itself, "imposes" an additional burden on what the legislature has said is proof enough by requiring more than a "mere preponderance" of the evidence. And, likewise, to uphold the conveyance the majority call for the same high degree of proof, practically beyond a reasonable doubt, where title is taken in joint tenancy, if ever the property conveyed or the consideration for it had community character.

In closing, may I here and now accept my equal share of responsibility for promulgating the objectionable dictum in the case of Chavez v. Chavez, supra. My concurrence in that opinion, as finally drafted, will be found along with that of other members of the court. The full import of the dictum escaped me at the time and it was not until I observed the effort to give it added standing by reaffirming it in this case that I gave the matter closer study and became well convinced that the objectionable language was unsound and without support in precedent, reason or logic. I welcome this early opportunity to atone for my error in signing the opinion in the Chavez case with this erroneous dictum in it. It was unnecessary to a decision and had absolutely no place there.

In the inventory filed in the case by the surviving widow as administratrix of her husband's estate, she stated she was not aware that the property was held in joint tenancy until an abstract held by an insurance company in connection with a loan on the property was returned to her after her husband's death. It is this legal opinion of a layman, the widow, on the state of

the title, one very likely ignorant of the distinction in law between community property, joint tenancy and cotenancy, that is deemed sufficient to destroy the estate in joint tenancy between the husband and wife under which both had held title to the property for three years prior to the husband's death and had joined in mortgaging it as security for a loan. The trial court should be permitted to pass upon the question of whether transmutation of the property to separate estate in the wife took place without imposing on her the burden of establishing it, for all practical purposes, beyond a reasonable doubt, as held by the majority.

In a revised edition of the majority opinion, written to take notice of my dissent, it is said:

"We deny any responsibility for the failure of the author of the dissenting opinion to distinguish between 'proof beyond a reasonable doubt' which is required in criminal cases, and 'proof that is clear, strong and convincing' which is required in several types of civil cases."

In attempting thus to restate in the preceding quotation the test "imposed by the court" in Chavez v. Chavez, supra, and here sought to be reaffirmed, the majority omit to give us a material and significant part of it as the essential degree of proof required, —viz., "more than a mere preponderance." They then speak patronizingly of my in-

ability to locate this criterion at some uncharted point between evidence that merely "preponderates," the test in civil cases, and "proof beyond a reasonable doubt", the quantum called for in criminal cases. Will the majority please do it for me? Of course, my dissent nowhere asserts there is not a distinction between "proof beyond a reasonable doubt" and "proof that is clear, strong and convincing; a mere preponderance of the evidence will not effect it." It does state in substance that the majority have set up a test which "for all practical purposes" will require "proof beyond a reasonable doubt".

The majority pose the test that the requisite quantum of proof to accomplish transmutation must be "more than a mere preponderance". How much more? They do not say. Is it "much" or "little"? Traditional legal definitions of evidence that "preponderates" and that which satisfies "beyond a reasonable doubt" are to be found in the books but I challenge the majority to say with exactness when it is "more than a mere preponderance", yet less than "proof beyond a reasonable doubt". The fact is the majority have set up for the courts a test which they themselves are unable to define—indeed, which is indefinable—and, yet, they characterize my inability to do what they can not as ignorance, in effect, of the distinction between the traditional tests in civil and criminal cases. All I can say is that my guess as to what is "more

than a mere preponderance" is as good as theirs!

It can easily be seen from the foregoing observations that my views and those of the majority do not coincide. Accordingly,

I dissent.