[Civ. No. 13525.   First Dist., Div. One.   Dec. 15, 1947.]

WILLARD S. COX, Appellant, v. OPAL G. COX et al., Respondents.

Wayne R. Millington for Appellant.

Norman S. Menifee for Respondents.

PETERS, P. J.—Plaintiff brought this action to quiet his title against the claims of defendant, his wife, to the sum of $16,797.13 on deposit with defendant title company, he claiming the money as his separate property. Defendant wife denied that plaintiff was the sole owner of the money, alleged that each owned an undivided interest in the fund, and by cross-complaint prayed for an equal partition of the joint tenancy fund. The trial court determined that the parties owned the money as joint tenants and that each was entitled to one-half thereof. From a judgment predicated upon this finding plaintiff appeals, the sole contention being that the basic findings are unsupported by the evidence.

The parties are husband and wife, having been married May 27, 1943. Prior to that time, the defendant had been the secretary of plaintiff, who operated a tire company, and, for some period not clearly defined and prior to the marriage, the parties lived together as husband and wife. At the time of the trial (March, 1947) a divorce action was pending between them. The money here involved is the proceeds from the sale of a piece of real property referred to as the "Southgate" property. The parties have stipulated that the fund bears the same character as joint or separate property as the "Southgate" property from which it was derived. Thus the basic issue presented to the trial court was whether the "Southgate" property was joint property or the separate property of plaintiff.

The "Southgate" property was purchased by Mr. and Mrs. Cox in May, 1945, at a time when plaintiff was having some financial difficulties with a prior wife. Admittedly, title was taken in the name of plaintiff and defendant as joint tenants. It is the contention of plaintiff, however, that the property was his sole and separate property, his argument being that "the preponderance of the evidence" shows that the money used in the purchase of the "Southgate" property was his separate property, and that he did not intend to create a true joint tenancy when he took the deed in his name and that of his wife.

The contention that the "preponderance" of the evidence favors plaintiff, even if correct, which it is not, could have no effect on this appeal. It is elementary that, in passing on the sufficiency of the evidence, the power of an appellate court is to determine whether there is any substantial evidence, direct or indirect, to support the challanged finding, and that an appellate court has no power to reverse on the ground that the evidence "preponderates" in favor of appellant. (*Rinker* v. *McKinley*, 65 Cal.App.2d 109 [149 P.2d 859]; *Hughes* v. *Grandy*, 78 Cal.App.2d 555 [177 P.2d 939].) This being so, the only question presented is whether there is any substantial evidence to support the finding that the property was joint tenancy property.

As already pointed out, the deed to the "Southgate" property named Mr. and Mrs. Cox as grantees as joint tenants. That property was purchased in May, 1945, for $10,600. Plaintiff testified that the money used to purchase the property was his separate property, being, so he claimed, money he had received when he sold his tire business in February, 1945, and savings made over a period of 30 years. Admittedly, he owned this tire business prior to his marriage to defendant. He testified that defendant contributed nothing to the purchase of the "Southgate" property.

He testified that in March, 1943, about two months before his marriage to defendant, he purchased a parcel of realty referred to as the "Altamont" property with money earned in the tire business, and took title in his name and that of defendant as joint tenants. This property was sold in October, 1945, for $8,950 less expenses.

Plaintiff also testified that when he sold his tire business in February, 1945, the selling price was $20,000; that he received $10,000 in cash, two houses in Oakland which were valued in the deal at $7,000, and the balance in installments; that he sold these houses in July, 1945, for $9,000 less expenses; that title to these houses was in his name alone. Defendant testified that "all" of the properties—the "Southgate" property, the "Altamont" property and the two houses in Oakland —were held in joint tenancy. The deeds were not produced.

Plaintiff also testified that while still operating the tire company, and apparently before the marriage of the parties but while they apparently were living together, he established a bank account on which both could draw checks, in order that she could pay the household expenses; that when he sold out,

because of ill health, he allowed the money from the sales above described to go into this joint account "because I did not know at what time I might drop out or drop off, as the fellow said, and I thought it was best to do it that way." He admitted that the money used to purchase the "Southgate" property came from that joint account, and stated that defendant could draw on that account "just as he could," but only for "household purposes." He contended that he had had the "Southgate" property put in joint tenancy for the same reason that he had put the bank account into that form of deposit, that is, he was ill and "I did not know what time that the Old Reaper might call. I felt that she would take care of me." He then testified that defendant had encouraged him to put the property into joint tenancy.

Defendant contradicted much of this evidence. She testified that she had worked as plaintiff's secretary most of her married life and that she had deposited her money in the joint account; that she had deposited and withdrawn money from that account just as did plaintiff; that the money for the "Southgate" property came from the joint account, and the check given them when they sold that property was made out in both their names; that everything she and her husband had, both cash and real property, was held in joint tenancy; that she at no time urged him to do this.

On this evidence, the court has found that the "Southgate" property and the fund derived from it were true joint tenancies. ■ It is undoubtedly the law that, regardless of the character of the deed taken by either or both spouses to property, that is, regardless of whether the deed shows it to be separate, community, tenancy in common or joint tenancy, the true intention of the parties may be shown by parol, and such evidence may controvert the apparent effect of the character of ownership provided for in the instrument of transfer. (*Huber* v. *Huber*, 27 Cal.2d 784 [167 P.2d 708]; *Tomaier* v. *Tomaier*, 23 Cal.2d 754 [146 P.2d 905]; *Luminoso* v. *Luminoso*, 75 Cal.App.2d 472 [171 P.2d 516].) It seems to be plaintiff's theory that when he testified that the money for all these properties came from his separately owned tire company, the trial court was compelled to find that all property bought with that money remained separate property. That, of course, is not the law. In the first place, the form of the deed cannot be so lightly disregarded. The fact that the deed to the "Southgate" property was taken in joint tenancy established

a prima facie case that the property was in fact held in joint tenancy. It raised an inference, even if the money used was separate property, that a gift was intended, there being no presumption of undue influence where the gift is from the husband to the wife. If it be conceded that the testimony of plaintiff tended to rebut the inference of a gift, whether it did in fact so rebut it was a question of fact for the trial court. Obviously, the trial court was not required to accept defendant's explanation. The deeds themselves created a conflict and support the finding. This was the precise holding in *Chamberlain* v. *Chamberlain*, 2 Cal.App.2d 684 [38 P.2d 790]. (See, also, *Olson* v. *Olson*, 4 Cal.2d 434 [49 P.2d 827].) The three cases cited above, and relied upon by plaintiff, do not suggest, far less compel, a contrary conclusion. The Huber and Luminoso cases were affirmances. In those cases the trial courts, on sufficient evidence, found that the prima facie cases established by the deeds had been rebutted, not as a matter of law, but as a matter of fact. The trial courts believed the evidence offered to controvert the inference or presumption created by the forms of the deed. The appellate courts affirmed. Here the trial court was not convinced by the controverting testimony. The two cases cited in no way support the theory advanced by plaintiff, but in fact support the holding here made that the question involved is one of fact and not of law, and that the deed alone supports the finding. The Tomaier case, the third case relied upon, was a reversal on the ground that the trial court had excluded evidence of the true intent of the parties. Such problem is not here involved.

In the present case we are not compelled to rely solely upon the joint tenancy deed to the "Southgate" property as establishing a true joint tenancy. In addition, the evidence shows that these parties engaged in a course of conduct, starting before their marriage and continuing until they separated, by which all their property was held in joint tenancy. Their bank account, the "Southgate" property, the "Altamont" property, and the Oakland properties, according to defendant, were all in joint tenancy. The defendant testified that her separate funds, as well as plaintiff's, went into the joint account. Admittedly, both could and did draw from the joint account. This evidence, when coupled with the form of the deed, amply supports the finding that when the joint tenancy in the "Southgate" property was created, plaintiff intended that defendant should have an interest in

the properties equal to his own. It is a reasonable inference that plaintiff's desire to deprive defendant of her interest developed only after differences arose between them leading to the pending divorce.

From the foregoing it is quite clear that the finding that a true joint tenancy was created in the "Southgate" property, and therefore in the fund in dispute, is amply supported. This being so, the judgment must be and is affirmed.

Ward, J., and Bray, J., concurred.