[Civ. No. 21451.   Second Dist., Div. One.   June 26, 1956.]

GEORGE S. SMITH, as Executor, etc., Appellant, v. RILEY
WILSON WISE, Respondent.

Glenn R. Watson and Robert G. Beverly for Appellant.

Forno & Umann, Joseph T. Forno, Harry M. Umann and
Burton Marks for Respondent.

FOURT, J.—This is an appeal by the plaintiff as the
executor of the estate of Hazel H. Wise, deceased, from a
judgment in favor of the defendant, Riley Wilson Wise.

In an action commenced by the plaintiff to quiet title
to certain real property, the complaint alleged that Hazel
H. Wise died testate on February 23, 1952; that the plaintiff
was the duly appointed executor of her estate, and at the
time of her death she and the defendant were husband and
wife and coowners of the real property in question.  The com-
plaint further alleged that by the terms of the will of de-
cedent, one-half of all community property owned by her
and her husband was devised to George S. Smith; that such
realty was community property and he was therefore entitled
to an undivided one-half interest therein; that the same was
subject to administration in the decedent's estate.

The defendant denied that the real property was part of
the community at the time of Hazel Wise's death.

It was stipulated at the trial that decedent and the defendant acquired title to the property under a deed wherein they were named grantees "as joint tenants"; also that Hazel Wise died February 23, 1952, and her estate was then the subject of probate proceedings.

The facts are substantially as follows: Hazel H. Wise and defendant married on January 12, 1938, and the real property in question was acquired by them after marriage. They lived together as husband and wife for about 13 years. In November, 1951, Hazel Wise filed an action for divorce against the defendant in which action, among other things, she filed an affidavit for an order to show cause wherein she set forth that the property in question was the community property of the parties; a copy of the affidavit was served upon the defendant and thereafter he filed the usual "husband's questionnaire" in which he did not dispute his wife's allegations concerning the property. Defendant filed a verified cross-complaint wherein he alleged the property in question to be the community property of the plaintiff and the defendant. The wife filed an answer to the cross-complaint wherein she admitted the truth of the allegation as to the community nature of the property.

After the divorce case was set for trial, but before being heard, Hazel Wise died. The wife's will and the various divorce proceedings were introduced into evidence without objection. Among other witnesses sworn was the defendant who testified in substance as follows:

"Q. (By Mr. Arak [Counsel for Defendant]) Mr. Wise, what was your understanding as to the difference between community and joint tenancy property at the time you filed your cross-complaint for divorce? A. As long as she was alive, it would belong to the two of us. But if I passed away, the property would go to her. If she passed away, the property was to go to me. But as we were both alive, it belonged to the two of us.

"Q. Now, under which was this, community property or joint tenancy property? A. Joint tenancy. If I passed away, the property would be hers. If she passed away, the property would be mine. And under community: we were both alive, and we would share alike and alike in it. It belonged to both of us.

"Q. Then at the time you filed this cross-complaint for divorce, your understanding was that there was no difference,

while the two of you were still living, between the two types of holding property or two manners of holding property? A. I don't quite get that.

"Q. Well, going back now to the time that you filed the cross-complaint for divorce,—— A. Yes.

"Q. ——was it your understanding at that time that so long as both you and your wife were alive, there was no difference in which manner the property was held, joint tenancy or community? A. Well, it was held in community property. We were both alive then; and if one of us should die, it would automatically go to the other."

He further testified with reference to what was said on an occasion when he and his wife were negotiating with an insurance agent for the placing of insurance on the property in question, as follows:

"THE WITNESS:——the coverage. And we discussed it, and we decided 'No,' we would leave it right at 10,000 for the house. And then he said, 'You still want this? The house is still in joint tenancy?' And we both said, 'Yes,' it was.

"THE COURT: Now, that was the statement made to him at your home, was it?

"THE WITNESS: Yes.

"THE COURT: In negotiating for the placing of the insurance?

"THE WITNESS: Yes sir.

"THE COURT: And Mrs. Wise was present?

"THE WITNESS: Yes, sir.

"THE COURT: What did she say about it?

"THE WITNESS: When he said, 'You still want this? The house is still joint tenancy?' and we both said, 'Yes,' and then she asked him again, she said, 'That joint tenancy, does that mean that it will go to me if he dies or it goes to him if I die?' And he said, 'Yes.' Well, she said, 'That's the way that we wanted it when we bought the house, and that's the way I want it now.'"

The pertinent parts of the will, so far as this case is concerned, provided as follows:

"FOURTH: All the rest, residue and remainder of my estate either real, personal or mixed, of whatsoever kind or character, and wheresoever situated, of which I may die possessed, or to which I may in any manner be entitled to, including but not limited to all of my right, title and interest in and to the real property located at 1822 West 76th Street, Los Angeles, California, and such other property which is

now in the possession of my husband, Riley Wilson Wise, and in which I *may* have a community interest, to my brother GEORGE S. SMITH who is now residing at 1822 West 76th Street, Los Angeles, California.'' (Emphasis added.)

It is admitted that the defendant did not know of the will until after the death of his wife.

The appellant's contention is that the property must be held to have been the community property of the parties on the date of Hazel H. Wise's death and that the evidence is insufficient to support the trial court's conclusion that the real property was, on the date of her death, owned by the decedent and respondent as joint tenants.

A reading of the testimony discloses nothing as to what was said or done between Mr. and Mrs. Wise to transmute the property to community property. The wife died before the divorce case was tried and gave no testimony by deposition or otherwise as to how, when, where or in what manner the alleged transmutation took place. The husband's testimony shows that he had a complete misunderstanding of the terms used in his cross-complaint.

It was appropriately stated in the Journal of the State Bar of California, volume XXVIII, page 180, as follows: ''The truth of the matter, as all lawyers can testify, is that laymen do not ordinarily understand the differences between joint and community property and commonly use the latter term to refer to all property equally owned by husband and wife. It would be a mistake, in a case involving the rights of third parties, to attribute much significance to casual references to property as community property. Much more weight should be given to expressions of intent as to incidents of ownership, such as the respective rights of the parties in management and disposition of the property and the power of testamentary disposition as contrasted with the right of survivorship.''

The form of the deed cannot be lightly disregarded. True it is that the wife stated in the divorce proceeding that the property was community property, and defendant, under a mistake as to the meaning of the terms, also stated that it was community property, but all this did was to create a conflict in the evidence. The trial court believed that the evidence offered to rebut the presumption created by the form of the deed was not sufficient to rebut the same. The fact that the deed was taken in joint tenancy established a prima facie case that the property was in fact held in joint tenancy.

The question is one of fact and the deed alone supports the finding. (*Cox* v. *Cox*, 82 Cal.App.2d 867, 871 [187 P.2d 23].) In this case, however, there was additional evidence that the husband and wife told an insurance agent that the property was to be in joint tenancy. The court apparently believed the husband in his testimony that any allegations made to the effect that the property was community property was done so mistakenly.

The trial court, at the conclusion of the testimony, said: "I am inclined to think that the parties here are like most laymen dealing with this problem. The only aspect of community property that most laymen seem to know is the rights of survivorship, and that is the one in which they are primarily interested in an attempt to avoid the expense of probate proceedings. With the exception of the allegations in the cross-complaint for divorce, most of the evidence is as consistent with a layman's conception of joint tenancy as it is with community property, or vice versa, and I can't give to the allegations in the cross-complaint the dignity and effect of a change in the holding of the title of property.

"I think that the evidence here is insufficient to overcome the effect of the deed. And, therefore, it is my finding that the property was joint tenancy, and, therefore, my judgment would be for the defendant."

Judgment affirmed.

White, P. J., and Doran, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 21, 1956.