[Civ. No. 7646.   Fourth Dist., Div. One.   Feb. 25, 1966.]

ANN A. GLODEN, Plaintiff and Appellant, v. CHARLES L. GLODEN, Defendant and Respondent.

Whelan & Miller and Ray Miller for Plaintiff and Appellant.

Hervey & Mitchell and James Edgar Hervey for Defendant and Respondent.

CONLEY, J.*—Ann A. Gloden sued her husband, Charles L. Gloden, for divorce, and he, in turn, filed a cross-complaint. The court granted a decree to Mrs. Gloden and transferred to her, as sole owner, almost all of the community property consisting of bonds, but awarding a used automobile of little or no value to the defendant. With respect to the principal item of property owned by the parties, a 21-room San Diego motel and its furnishings, the court decided that it was owned in joint tenancy, and, pursuant to specific provisions in the pleadings and the stipulation of the parties for the submission of such an issue to the court, it was ordered that the motel be sold and that the proceeds, after proper deductions for the interim operation of the hostelry, should be divided between the parties, subject, however, to the payment from defendant's share of a certain balance of community funds.

In the absence of appropriate pleadings submitting the additional issue of division of any joint tenancy property, a divorce court lacks jurisdiction to divide, or otherwise dispose of, any joint tenancy property owned by the parties. (*Davis* v. *Davis,* 222 Cal.App.2d 691 [35 Cal.Rptr. 281]; *Mears* v. *Mears,* 180 Cal.App.2d 484, 500 [4 Cal.Rptr. 618].) However, the record in this litigation competently covered this additional issue relative to the disposition of any property which might be determined to be joint tenancy property, and, consequently, neither party objects to the action of the court in assuming the burden of disposing of joint tenancy property.

The plaintiff appeals from that portion of the judgment which holds that the motel and its contents are joint tenancy property; she maintains that it was community property and that it should be assigned to her as sole owner.

The parties were married in Peoria, Illinois, on November 10, 1952, and moved to California in February 1953, having at that time the general intention of buying a motel in the San Diego area. Shortly after the marriage, the plaintiff wife had learned that the husband was by no means a model spouse. In Illinois they lived in Walnut, a small town of less than 1,500 people, and Mrs. Gloden had been there for upwards of 20 years; she there operated two restaurants and deposited the proceeds of her businesses in her bank account; she had owned property in addition as a joint tenant with a former husband.

After arriving in California, the parties purchased a 21-unit motel located at 3494 Main Street in San Diego for the total

---

*Assigned by the Chairman of the Judicial Council.

sum of $105,000 of which the down payment was approximately $20,425. Besides making the first payment from her own funds, Mrs. Gloden also gave the seller a check for $10,000 which purported to be a loan. The escrow instructions, a bill of sale to the personal property, a promissory note secured by a first deed of trust for the balance due, and a grant deed all provided that title to the motel was vested in the husband and wife as joint tenants with the right of survivorship. Mrs. Gloden frankly testified that she intended title to the motel to be vested in the parties as joint tenants, and that there was never an agreement, oral or written, which deviated from the original intention. The record shows the following:

"Q. By Mr. Hervey:

"Q. Mrs. Gloden, you have already testified that you had no agreement or discussion or understanding with Mr. Gloden concerning how much of the motel you would own and how much of the motel he would own. Isn't that correct?

"A. Right.

"Q. Similarly, there was no agreement or understanding with Mr. Gloden as to how much of the motel he would pay for or how much of the motel you would pay for, was there?

"A. No.

"........

"By Mr. Hervey:

"Q. Now, at the time you purchased the property, you have already testified you knew the title was in your name and your husband's name as joint tenants, isn't that correct?

"A. Yes.

"Q. While you had no formal understanding, perhaps of what 'joint tenancy' was, you understood that it was in his name and in your name, and that if he died before you did, you would inherit his half, and if you died before he did, he would inherit your half; isn't that correct?

"A. I hadn't gave it much thought, but no doubt that's the way it worked. At the time you don't think of those at this moment.

"Q. You hadn't thought of it particularly, but that was your understanding?

"A. Generally, yes.

"Q. Is that correct?

"A. Yes.

"Q. So that your general understanding at the time of the purchase of the property was that by reason of the title being

in joint tenancy, if he survived you, he would inherit your half?

"A. Yes.

"Q. And if you survived him, you would inherit his half?

"A. Yes."

The plaintiff further testified at the trial as follows:

"Q. Now, as a matter of fact, the fact that this property was in joint tenancy and that you would inherit his share if he died first was very important to you, wasn't it?

"A. I hadn't thought much about it, but if he passed away, yes, I expected it to be mine.

"Q. You felt that if he passed away, he should not have the right to give his half away, that it should automatically go to you?

"A. Yes, I felt that way, yes.

"Q. And similarly, if you passed away you thought he had an absolute right to inherit your interest?

"A. Absolutely."

The plaintiff further testified as follows:

"Q. And when you bought it you considered it 'our motel'?

"A. Right.

"Q. And you put the title in your husband's name as a joint tenant?

"A. Both our names.

"Q. And there was no agreement as to how the title would be held, was there?

"A. No.

"Q. There was no understanding that it would be held in any manner other than joint tenancy, was there?

"A. Not to my knowledge."

The "loan" of $10,000 to the seller consisted of money which had been the separate property of plaintiff; it was applied at maturity toward the purchase price of the motel; the balance owed, represented by the encumbrance, was ultimately paid in full from the earnings of the motel which from time to time had been deposited in a joint account of plaintiff and defendant.

While there was a conflict of evidence as to the source of the funds used for the purchase of the motel and its contents, the court legitimately determined that all funds advanced, except the moneys derived from the operation of the motel, were originally the separate property of the plaintiff. And the court found that the presumption which followed from the form of the deed that the property was held in joint tenancy, was

never changed or affected by any agreement, express or implied, between the parties, and that, consequently, the motel and its furnishings were in fact owned in joint tenancy.

Incidentally, it may be observed that the holding relative to the joint tenancy property was contrary to the trial judge's viewpoint of the personal rights and wrongs of the marriage. The complaint, as amended, is filled with allegations concerning serious faults of the defendant from a marital standpoint. Plaintiff alleges that shortly after her marriage she discovered that defendant had been incarcerated for 11 months in the federal detention facility for drug addicts at Fort Worth, Texas; that he frequents Tijuana; that he falls asleep in his automobile with the motor running; that he is a menace to the health and safety, not only of his own person, but to others; that he makes no effort to support himself; that he has surreptitiously removed personal property of the motel and disposed of it; that he knowingly issues checks without sufficient funds; that he viciously slaps plaintiff and has threatened to kill her; that he is continuously armed with a revolver and has also frequently threatened the employees of the motel. The trial court found that these allegations were true, and more than once during the lengthy trial the judge excoriated the defendant for his actions in the courtroom and indicated that if he did not render common courtesy to the court and counsel on the witness stand, he would commit him for contempt. It is apparent that the judge's holding that the defendant was entitled, generally, to a half share of the joint tenancy property was not due to anything but a firm conviction that the law and the facts as developed at the trial compelled such a finding, notwithstanding the marital inequities of the defendant.

The execution of a joint tenancy deed to a motel[1] creates a presumption that the property described in it is in fact so owned, and the burden of proof is on the party who seeks to rebut the presumption to establish that the property is held in some other way. As is pointed out in *Schindler* v. *Schindler*, 126 Cal.App.2d 597, 602 [272 P.2d 566]: "The form of the deed cannot be lightly disregarded. Even with

---

[1]Civil Code, section 164, was amended by the Legislature in 1965 (Stats. 1965, ch. 1710, § 1, pp. 3843-3844) to add the following: "When a single family residence of a husband and wife is acquired by them during a marriage as joint tenants, for the purpose of the division of such property upon divorce or separate maintenance only, the presumption is that such single family residence is the community property of said husband and wife."

evidence of contrary intent, the deed alone creates a conflict of fact. (*Cox* v. *Cox*, 82 Cal.App.2d 867, 870-871 [187 P.2d 23].) As stated in *In re Rauer's Collection Co.*, 87 Cal.App.2d 248, 257 [196 P.2d 803], 'The form of the conveyance is itself some evidence of the intent to change it from community property, and creates a rebuttable presumption to that effect.' '' (See also *King* v. *King*, 107 Cal.App.2d 257, 259 [236 P.2d 912].)

In *Siberell* v. *Siberell*, 214 Cal. 767, 773 [7 P.2d 1003], it was pointed out: ''First, from the very nature of the estate, as between husband and wife, a community estate and a joint tenancy cannot exist at the same time in the same property. The use of community funds to purchase the property and the taking of title thereto in the name of the spouses as joint tenants is tantamount to a binding agreement between them that the same shall not thereafter be held as community property but instead as a joint tenancy with all the characteristics of such an estate.''

The Supreme Court added to the conclusion in the *Siberell* case by saying in *Delanoy* v. *Delanoy*, 216 Cal. 23, 26 [13 P.2d 513], that it applied ''in the absence of any evidence of an intent to the contrary.'' The opinion in *Tomaier* v. *Tomaier*, 23 Cal.2d 754 [146 P.2d 905], further referred to the *Siberell* holding by saying that it was error to exclude parol evidence showing that the parties intended to retain the community character of their property in spite of the joint tenancy form. The controlling California rule is stated in 1953 in *Gudelj* v. *Gudelj*, 41 Cal.2d 202, 212 [259 P.2d 656] as follows: ''. . . 'it is well settled in this state that the form of the instrument under which a husband and wife hold title is not conclusive as to the status of the property and that property acquired under a joint tenancy deed may be shown to be actually community property or the separate property of one spouse according to the intention, understanding or agreement of the parties.' . . . 'Whether the evidence against the presumption is sufficient to overthrow it is a question of fact.' . . . However, the presumption arising from the form of the deed may not be rebutted solely by evidence as to the source of the funds used to purchase the property.'' In *Cox* v. *Cox*, 82 Cal.App.2d 867, 870 [187 P.2d 23], it is said: ''It is undoubtedly the law that, regardless of the character of the deed taken by either or both spouses to property, that is, regardless of whether the deed shows it to be separate, community, tenancy in common or joint tenancy, the true intention of the parties may be shown by parol, and such evidence may controvert the appar-

ent effect of the character of ownership provided for in the instrument of transfer. (*Huber* v. *Huber*, 27 Cal.2d 784 [167 P.2d 708] ; *Tomaier* v. *Tomaier*, 23 Cal.2d 754 [146 P.2d 905] ; *Luminoso* v. *Luminoso*, 75 Cal.App.2d 472 [171 P.2d 516].) '' (See also *Chamberlain* v. *Chamberlain*, 2 Cal.App.2d 684 [38 P.2d 790] ; Griffith, *Community Property in Joint Tenancy Form*, 14 Stan. L. Rev., 87, 91-93.)

Counsel for the appellant argue that the present law is unrealistic because many people who know little about the intricacies of legal principles, and who blindly follow the advice of real estate brokers and others who are not lawyers, adopt the device of holding property in joint tenancy, which is in fact community property, or separate property of one of the parties, without agreeing in clear terms that the property is not in fact joint tenancy property, but is actually either separate or community property. This is an argument which the Legislature might consider, if it sees fit, but which cannot be adopted or approved by an intermediate appellate court.

We find that the trial court had before it ample evidence for its decision, and we cannot interfere with the conclusion reached below.

The judgment is affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.